# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: ) | |
| ) | |
| KEITH GORMAN, ) | Chapter 11 |
| ) | Case No. 22-10563-BAH |
| Debtor. ) | |
| ) | |
| ) | |
| ) | |
| BENSON LUMBER & HARDWARE, INC., ) | |
| ) | |
| Plaintiff, ) | Adv. Proc. No. 23-01003-BAH |
| ) | |
| v. ) | |
| ) | |
| KEITH GORMAN, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## BENSON LUMBER & HARDWARE, INC.'S (I) RESPONSE TO CLAIM OBJECTION AND (II) MOTION TO DISMISS DEFENDANT'S STATEMENT OF COUNTERCLAIMS

Benson Lumber & Hardware, Inc. ("Benson Lumber" or the "Plaintiff"), by and through its undersigned attorneys, Sheehan Phinney Bass & Green PA, hereby (I) responds to the Claim Objection incorporated in the Defendant's Answer to the Complaint (the "Answer") [Docket No. 12] and (II) moves this Court to dismiss Defendant's counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012. In support of this response and motion, Benson Lumber states as follows:

### FACTUAL BACKGROUND

On November 15, 2022, the Defendant, Keith Gorman ("Gorman" or the "Defendant") commenced this bankruptcy case.

{S2412708.1}

On January 24, 2023, Benson Lumber timely filed a proof of claim with this Court (the "Benson Lumber Claim") [Claim No. 11]. The Benson Lumber Claim asserts an unsecured claim in the amount of not less than $406,419.93 on account of the Defendant's guaranty obligations for the liabilities of SER. The Benson Lumber Claim included an addendum and several exhibits, including the Guaranty executed by the Defendant on or about February 14, 2020 (the "2020 Guaranty") [Claim No. 11, Ex. C]. By the 2020 Guaranty, the Defendant guaranteed the payment and performance of any and all liabilities of SER then existing and thereafter arising. Id.

On March 3, 2023, Benson Lumber commenced this action by filing a complaint against the Defendant (the "Complaint") [Docket No. 1]. Benson Lumber incorporates the Complaint by reference in this pleading.[1]

In summary, the Complaint seeks a ruling of this Court that the Benson Lumber Claim is a non-dischargeable debt under Bankruptcy Code §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6). The central allegation made in the Complaint is that the Defendant fraudulently induced and deceived Benson Lumber into forbearing its collection action by offering a Promissory Note that was secured by a mortgage on three properties (the "Mortgage"). Complaint, Exs. B and D. The problem, however, was that the Defendant caused one of the three properties to be sold to a third-party just weeks before the Promissory Note and Mortgage were executed. This false representation, fraud and knowing and willful deception is the reason that the Benson Lumber Claim must be determined non-dischargeable.

On May 5, 2023, the Defendant filed his Answer to the complaint and asserted

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed in the Complaint.

{S2412708.1} 2

counterclaims against Benson Lumber.  The Answer may be more telling for what it does not say for all that it does.  The Answer does not refute that one of the properties offered as collateral was sold prior to the execution of the Promissory Note and related documents.  Instead of responding to the specific allegation that the property (Unit 1 at 42 Highland Street) included in the collateral package given to Benson Lumber on February 14, 2020 was actually sold to a third-party on January 17, 2020, see Complaint, ¶32, the Defendant's corresponding response in the Answer is merely:

> The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

Answer, ¶32.

The Answer tries to explain the collateral misrepresentation by arguing that Defendant's attorney made a mistake and that Benson Lumber should have been aware that "one of the units was subject to a mortgage held by 59 Newhall St. Realty Trust ("59 Newhall Trust")."  Answer, ¶26.  But that explanation makes no sense.  The issue isn't that of mistake or that one of the units was subject to a mortgage by 59 Newhall Trust.  The issue is that the property had ALREADY been sold to a third-party prior to including it in Benson Lumber's collateral package.  The Defendant and SER only had two properties to offer as collateral, but it offered, and purportedly conveyed, three.  It is irrelevant that a property that was not the Defendant's to offer as collateral might have had a pre-existing mortgage.  The Defendant purposefully seeks to distract from the issue:  The Defendant provided collateral to Benson Lumber that it sold just weeks beforehand, and knew he did not own any interest in.

Rather than address or dispute the missing collateral issue, the Answer instead relies on

mistake (without offering which other property that was owned by SER was supposed to be included in the collateral package) and an orchestrated argument that the Promissory Note and related agreements constituted a compromise of SER's debt to Benson Lumber.  Relatedly, the Defendant also objects to the Benson Lumber Claim and brings counterclaims, all of which, if not dismissed, are more like elements of a claim objection for which the Defendant has failed to meet his burden.

## ARGUMENT

By his Answer, the Defendant objects to the Benson Lumber Claim and asserts counterclaims against Benson Lumber.  But neither of these efforts to obfuscate the facts of the Complaint have merit.  The claim objection should be overruled and the counterclaims dismissed.

**I.  DEFENDANT HAS FAILED TO MEET HIS BURDEN OF PRESENTING SUBSTANTIAL EVIDENCE TO OVERCOME THE PRESUMPTION OF VALIDITY OF THE BENSON LUMBER CLAIM**

Pursuant to Bankruptcy Rule 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).  A claim which comports with Rule 3001, such as Benson Lumber's claim, is entitled to a presumption of validity.  Id.  If a party in interest objects to a proof of claim, that party bears "the initial **burden of producing substantial evidence**" to overcome the presumption of validity to which a properly executed proof of claim is otherwise entitled.  Juniper Dev. Group v. Kahn (In re Hemingway Transp. Inc.), 993 F.2d 915, 925 (1st Cir. 1993)(Emphasis added).  Only if the objector meets its burden of substantial evidence, does the burden shift back to the claim-filing creditor to establish the allowability of the claim by a

preponderance of the evidence.  Id.; see, e.g., American Express Bank v. Askenaizer (In re Plourde), 418 B.R. 495, 504 (B.A.P. 1st Cir. 2009) ("If the objection is substantial, the claimant 'is required to come forward with evidence to support its claims . . . and bears the burden of proving its claims by a preponderance of the evidence.'"), quoting, Tracey v. United States (In re Tracey), 394 B.R. 635, 639 (B.A.P. 1st Cir. 2008)); Ezenia! Inc. v. Nguyen (In re Ezenia! Inc.), 536 B.R. 485, 496 (Bankr. D. N.H. 2015).

The Defendant's claim objection advances **no** evidence or any support for the denial or reduction of the Benson Lumber Claim, much less the "substantial evidence" required to overcome the presumption of validity which the Benson Lumber Claim enjoys.  Instead, the Defendant distracts from the significant allegations that support a finding of non-dischargeability of Benson Lumber's claim by making a conclusory and self-serving argument of the existence of a "Compromise Transaction."  Answer, pp. 4, 19-20.  In doing so, the Defendant acknowledges the underlying debt that supports the Benson Lumber Claim but wishes it away by arguing that his false representations and fraudulent conduct that led to the Promissory Note, 2020 Guaranty and related agreements should be viewed as a compromise and satisfaction of the debt that he guaranteed.  These arguments are not persuasive.

First, the Defendant's calling the Promissory Note, the 2020 Guaranty and related agreements a "Compromise Transaction" does not make it so.  There is no provision in those documents and the Defendant cites none that support his allegation of compromise.  Indeed, the opposite exists.  By a plain reading of the 2020 Guaranty, the Defendant unconditionally provides a guaranty of any and all SER debt then existing or thereafter arising.  Any argument by Defendant that this guaranty was somehow limited is belied by the explicit provisions of the

2020 Guaranty.  Second, and more importantly, using a transaction that has been alleged as fraudulent by Benson Lumber, and which Defendant's response denies fraud but admits mistake, cannot be the basis upon which the Benson Lumber claim is denied or reduced.  Finally, there continues to be a fatal flaw in Defendant's response to Benson Lumber's allegations.  As noted above, Benson Lumber has clearly established that the collateral package offered by the Defendant was not what the Defendant represented.  The Defendant does not refute that the property was sold prior to its inclusion in the collateral package, a fact that the Defendant knew as he signed both (i) the deed that transferred the property on January 17, 2020 (see Complaint, Ex. E) and (ii) the Promissory Note and related documents listing the same property as collateral on February 14, 2020 (see Complaint, Exs. B-D).  Thus, it would be highly inequitable for the Benson Lumber Claim to be compromised as a result of the Defendant's own misrepresentations.

For the reasons stated above, the Defendant's objection to the Benson Lumber Claim should be overruled and determined to be non-dischargeable.

## II. DEFENDANT HAS FAILED TO STATE ANY PLAUSIBLE CLAIM FOR RELIEF.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, the court employs a two-step approach.  See Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, the court screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare

recitals of the elements of a cause of action." Id. Second, the court credits as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determines if those allegations and inferences support a claim upon which relief might be granted. Id. Courts may augment those pleaded facts and inferences with information from "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

The "make-or-break standard" set by Rule 12(b)(6) is that the allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Deep's of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

### A. Defendant's Claim that Benson Lumber's Proof of Claim is Overstated (Count A) Should be Dismissed

This Count would appear to be a continuation of, or otherwise included in, the Defendant's claim objection. Benson Lumber incorporates its argument opposing the claim objection (see Section I), noting, again, that Defendant advances no evidence for the denial or reduction of the Benson Lumber Claim, much less the "substantial evidence" required to overcome the presumption of validity of the claim. Instead, the Defendant argues for a "complete accounting for the balance due under the Benson Note" and then suggests, "on information and belief," that other payments were received by Benson Lumber from an entity related to the Defendant.

To the extent a full accounting is requested, Benson Lumber set forth in its Proof of Claim various supporting documents and noted that "[c]opies of any additional pertinent documents that support this Proof of Claim are available upon request." Proof of Claim #11. The Defendant has made no request to Benson Lumber for additional supporting information.

The Defendant's other allegation in support of this Count is equally unpersuasive.  The Defendant speculates, "on information and belief," that payments have been made by a related entity, Zaana-17 LLC ("Zaana").  The Defendant does not allege the amount of any such payments or whether those payments were somehow improperly applied; the Defendant merely asserts that payments were made.  In a non-sequitur, the Defendant concludes the Count with a general statement (not even an allegation) that has no support anywhere in the Answer that the Defendant is entitled to credit for any excess payments made by Zaana that exceeded market prices.  These bald allegations are exactly the type that the Court can safely ignore.  LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)( The Court must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored.")  At best, this Count is duplicative of the claim objection with the same infirmities.  Accordingly, Count A must be dismissed.

**B. Defendant's Claim that Benson Lumber's Proof of Claim is Barred or Limited by the Compromise and Settlement Transaction (Count B) Should be Dismissed**

Returning once again to the Benson Lumber Claim, Count B is yet another element of the claim objection and not properly a counterclaim.  Benson Lumber incorporates its argument opposing the claim objection (see Section I), noting, again, that Defendant advances no evidence for the denial or reduction of the Benson Lumber Claim, much less the "substantial evidence" required to overcome the presumption of validity of the claim.

In Count B, the Defendant reintroduces the argument that the Promissory Note, 2020 Guaranty and related documents constituted a compromise of all existing debts owed to Benson

Lumber and guaranteed by the Defendant.  As already argued, the Defendant offers no proof or evidence of any such compromise, and all other related arguments are wholly without merit.  Somehow, the Defendant argues that absent Benson Lumber's rescission of the 2020 transaction that it was fraudulently induced into entering, Benson Lumber's entire claim should be disallowed.  In addition to being nonsensical, it is a remarkably convenient means of eliminating or disallowing (as the Defendant requests) a valid claim.  Like Count A, this is duplicative of the claim objection with the same infirmities.  Accordingly, Count B must be dismissed.

### C. Defendant's Claim that Benson Lumber's Claims Are Avoidable Under Bankruptcy Code Section 544 (Count C) and UFTA Section 545-A:4, I(b) (Count VI) Should be Dismissed

Turning his own fraudulent conduct on its head, the Defendant seeks to avoid his guaranty obligations and to recover transfers made by SER as being fraudulent under 11 U.S.C. §§ 544(b) and 550 and NH RSA 545-A:4(I)(b) (Counts C and VI).[2]  But the counterclaims are patently deficient for a whole host of reasons.

As a threshold matter, Section 544(b)(1) authorizes a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1).  Hence, under Section 544(b), the trustee may avoid a transfer of an interest of the debtor or an obligation incurred by the debtor that is voidable under applicable non-bankruptcy law.  Here, the Defendant asserts that the "applicable law" for purposes of Section 544(b) is the New Hampshire Uniform Fraudulent Transfer Act.

---

[2] The counterclaim Counts are labeled as set forth in the Answer, recognizing that there are only four counts labeled Count A, Count B, Count C and Count VI.

{S2412708.1}                                    9

The power given to a trustee under Section 544(b) to avoid a transfer or obligation is derivative, that is, there must be an actual existing creditor holding an allowable unsecured claim who would have had that right outside of bankruptcy.  In other words, "to succeed under § 544(b), 'the trustee must show that the transfer is voidable under state law by at least one unsecured creditor of the bankruptcy estate with an allowable claim.'" Ford v. Blaine, 2006 Bankr. LEXIS 2019, *9 (Bankr. D. N.H. 2006) (quoting Williams v. Marlar (In re Marlar), 267 F.3d 749, 753 (8th Cir. 2001)).

Since the Defendant is proceeding under Section 544(b)(1),

> In order to avoid the transfer in question, the trustee 'not only must show that the conditions of state law have been satisfied, but also that, at the time that the transaction at issue occurred, there was in fact a creditor in existence who was holding an allowed unsecured claim, and second that the transaction could have been avoided by such creditor under applicable state law.'

Blaine, 2006 Bankr. LEXIS at *10 (quoting Young v. Paramount Communications Inc. (In re Wingspread Corp.), 178 B.R. 938, 945 (Bankr. S.D.N.Y. 1995)).  Because the Defendant has not established the existence of a creditor at the time of the challenged transfer who held an allowed unsecured claim on the petition date, the Defendant lacks standing to assert Counts C and VI and those counts should be dismissed without further consideration.

Even if standing exists, the Counts have other failings.  First, as a preliminary matter, the Defendant blurs or otherwise ignores the distinction between himself and SER.  As admitted in the Answer, the Defendant guaranteed the obligations of SER.  The 2020 Guaranty was unconditional and required the payment and performance of any and all liabilities of SER then due and arising thereafter.  See Complaint, Exhibit C.  Benson Lumber has asserted an unsecured claim on account of the Defendant's guaranty of the full amount of the SER liability.  The

counterclaims, though, focus on the deficient security provided by SER, suggesting that Benson Lumber's claim on account of the Defendant's guaranty claim is somehow subject to avoidance and that the payments "made by the Defendant" on account of the Promissory Note should be returned by Benson Lumber to the Defendant. Answer, p. 24. But there is no allegation that the Defendant made any payments. Quite the opposite, it was SER that made the partial payments and, as such, there is no basis for the return of those payments made by SER to the Defendant. Additionally, in Count C, the Defendant asks the Court to avoid and preserve for the "benefit of the Defendant and the estate each Benson Obligation complained of in this Count." Answer, p. 24. Benson Obligation is not a defined term. But putting that aside, this is nonsensical. Benson Lumber has filed an unsecured claim on account of the Defendant's guaranty obligation. On what grounds should Benson Lumber's claim be avoided for the benefit of the Defendant and his estate, especially given his own deception and unclean hands.

Second, apart from the confusion within the counterclaims concerning the parties, the Defendant has failed to adequately plead the elements of a constructively fraudulent transfer claim. "[T]he elements of fraudulent transfer claims vary depending upon the specific statute, but in general, each requires an allegation of a transfer of the debtor's property that was made, while the debtor was insolvent, undercapitalized or unable to pay its debts as they matured, for which the debtor received less than reasonably equivalent value." <u>Official Comm. of Unsecured Creditors v. Foss (In re Felt Mrg. Co.)</u>, 371 B.R. 589, 635-36 (Bankr. D. N.H. 2007). Here, the Defendant makes no allegation anywhere in the Answer or counterclaims that he was insolvent at the time of the 2020 Guaranty. This fatal pleading deficiency alone should result in Counts C and VI being dismissed.

Even assuming that these Counts can be maintained by the Defendant (not SER) and that his insolvency was adequately pled, the Defendant's counterclaims must contain sufficient allegations that demonstrate he did not receive reasonably equivalent value for the transfer. This pleading requirement obligates a plaintiff to use "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Additionally, a plaintiff's conclusory allegations that the debtor did not receive reasonably equivalent value, "[s]tanding alone, . . . merely parrot the relevant statutory provision and do not provide a factual foundation that would permit a court to conclude that the Complaint states a plausible claim for relief." Goldstein v. BRT, Inc. (In re Universal Mktg., Inc.), 460 B.R. 828, 837 (Bankr. E.D. Pa. 2011). But the Defendant's counterclaims do exactly that. In fact, Counts C and VI are the exact "parroting" of Bankruptcy Code Section 544 and NH RSA 545-A:4(I)(b) that Goldstein warns against. The Defendant provides no substantive allegations other than quotes of the relevant statutes.

Notwithstanding the Defendant's failure to adequate plead a lack of reasonably equivalent value, as alleged in the Complaint, absent the issuance of the Promissory Note, 2020 Guaranty and related agreements, Benson Lumber was prepared to move forward with collection activities. But by the granting of the Promissory Note secured by the properties and the execution of 2020 Guaranty, Benson Lumber also continued to extend credit to SER. Based on these facts alone, the Defendant's thin-bare allegation of a lack of receipt of reasonably equivalent value is without merit.

In summary, the Claim Objection and related counterclaims should be overruled and dismissed, respectively. Indeed, other than the meritless Counts C and VI, the counterclaims are

just disguised objections to the Benson Lumber Claim. The relief sought by the Defendant should be denied.

## WAIVER OF MEMORANDUM OF LAW

Benson Lumber requests that the Court waive and dispense with the requirements set forth in LBR 7102(b)(2) that any motion filed shall have an accompanying memorandum of law. The legal authorities upon which Benson Lumber relies are set forth in the Motion. Accordingly, Benson Lumber submits that a waiver of the LBR 7102(b)(2) requirement is appropriate under these circumstances.

WHEREFORE, Benson Lumber respectfully requests that this Court enter an Order (1) overruling the Defendant's objection to Benson Lumber's Claim, (2) dismissing the Defendant's counterclaims, and (3) granting Benson Lumber such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

BENSON LUMBER AND HARDWARE, INC.

By its Attorneys,

Dated: June 16, 2023
/s/ Christopher M. Candon
Christopher M. Candon (BNH 07285)
Sheehan Phinney Bass & Green PA
1000 Elm Street, P.O. Box 3701
Manchester, New Hampshire 03105-3701
(603) 627-8168
ccandon@sheehan.com

## CERTIFICATE OF SERVICE

      I, Christopher M. Candon, hereby certify that on this 16th day of June, 2023, a copy of the foregoing was served on all parties receiving notice via the Court's CM/ECF electronic filing system.

                                                                    */s/ Christopher M. Candon*