**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

In re:                                                        CHAPTER 11

**KEITH GORMAN,**                                            Case No. 22-10563-BAH

     Debtor.

Benson Lumber & Hardware, Inc.,

     Plaintiff,

v.                                                            Adv. Pro. No. 23-01003-BAH

Keith Gorman,

     Defendant.

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND**
**COUNTERCLAIMS AGAINST PLAINTIFF**

     Debtor and Debtor in Possession, **Keith Gorman** (the "Defendant" or "Mr. Gorman")

respectfully answers the Complaint filed by Benson Lumber & Hardware, Inc. (the "Complaint"

and "Plaintiff"), gives notice of the affirmative defenses to the claims made by the Plaintiff on

which he may rely at trial and counterclaims against the Plaintiff as follows:

### I.        JURISDICTION AND VENUE

    **1.**    The Defendant admits the allegation made in this paragraph.

    **2.**    The Defendant admits the allegation made in this paragraph.

    **3.**    The Defendant admits the allegation made in this paragraph.

### II.        PARTIES

    **4.**    The Defendant admits the allegations made in this paragraph.

5.      The Defendant admits each allegation made in this paragraph.

### III.    FACTS

6.      The Defendant admits the allegation made in this paragraph.

7.      The Debtor admits that Southern End Realty ("<u>SER</u>") is a  limited liability company that is or was engaged in the business of residential and commercial real estate development.  Except for the allegation or allegations specifically admitted herein, the Debtor does not have sufficient information at this time to form a reasonable belief as to the completeness and truth of any other allegation made in this paragraph and, therefore, denies each such allegation.

8.      The Debtor admits that (a) Frank Gorman ("<u>F Gorman</u>" or "<u>FG</u>") is his father, (b) Bryan Gorman ("<u>B Gorman</u>" or "<u>BG</u>") is his brother, (c) SER is a limited liability company and that (d) Defendant is a manager of SER.  Except for each allegation specifically admitted herein, the Defendant denies each and every other allegation made in this paragraph.

A.  <u>SER Credit Agreement</u>

9.      The Defendant admits the allegations made by Plaintiff in this paragraph subject to any limitations on the validity and enforceability of the SER Credit Agreement (the "<u>2011 SER Credit Agreement</u>" and "<u>2011 Line of Credit</u>") under applicable law, the Compromise and Settlement Transaction entered into by Benson, Defendant, SER, F Gorman and B Gorman, the affirmative negligence of Benson and other events and matters.  By way of further answer, the Debtor states that (a) the purpose of the 2011 Line of Credit was to permit SER to purchase building supplies and materials used in its business on open account and credit ("<u>Ordinary Course, Unsecured Trade Debt</u>"), (b) the 2011 Line Of Credit was limited to $15,000 as shown by <u>Exhibit A</u> to the Complaint (the "2011 Line of Credit" or "2011 SCR Credit Agreement"), (c)

Benson deliberately, intentionally or through affirmative negligence failed to monitor the SER account to ensure that SER did not exceed the 2011 Line of Credit limit and (d) on information and belief, F Gorman and B Gorman, who are now Chapter 7 debtors, also executed limited guaranties of open account, trade debt incurred for purchases made from Benson for ("Ordinary Course, Unsecured Trade Debt") subject to the limits of their liability under the guaranties and the validity and enforceability thereof.

10.     The Defendant admits that he signed the Guaranty, which is a part of the 2011 SER Credit Agreement attached to the Complaint as Exhibit A and that he guaranteed the payment of up to $15,000 of Ordinary Course, Unsecured Trade Debt subject to any limitations on the validity and enforceability thereof imposed by law or equity. By way of further answer, the Defendant states that, on information and belief, F Gorman and B Gorman are jointly and severally obligated to Plaintiff on account of guaranties given by them in connection with 2011 SER Credit Agreement up to $15,000 to the extent that any of the guaranties remain valid and enforceable despite the passage of time.

11.     The Defendant admits the allegation made in this paragraph. By way of further answer, Defendant states that the provision was superseded by the provision at the bottom of the same page that states that "1%" and was approved and initialed by "BNB," who is on information and belief Bradly Benson, the President and majority equity holder of Plaintiff.

12.     The Defendant admits that the SER Credit Agreement includes text that may create a contractual obligation to pay costs of collection, including reasonable legal fees if legal action is taken to enforce the SER Credit Agreement. By way of further answer, Defendant states that the agreement is no longer enforceable against Defendant and that it was never enforceable in any amount greater than $15,000.

**13.**　　The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation that "[p]ursuant to the SER Credit Agreement, SER purchased goods from Benson" and therefore denies such allegation.  Except for the allegation or allegations denied herein, Defendant admits that SER received goods from Benson.

**14.**　　The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation made in this paragraph and therefore denies such allegation.  By way of further answer, Defendant states that (a) the indebtedness for the purchased goods, the interest and attorneys' fees claimed by Benson in the Benson Proof were and are to the extent still outstanding nothing more than Ordinary Course, which were uncollectible Unsecured Trade Debt, (b) Benson, SER, F Gorman, B Gorman and the Defendant entered in an agreement to compromise and settle the Trade Debt for $150,000, without interest (the "Compromise and Settlement Transaction") (c) SER paid $60,000 of the $150,000 and would have paid it all but for the error made by counsel to SER and 59 Newhall Street Realty Trust's refusal to permit SER to pay the last $90,000 due Benson on the Compromise and Settlement Transaction by invoking a cross-collateral provision over SER's objection which proved to be beyond its control.

**15.**　　The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegations made in this paragraph and therefore denies such allegations.

B.　　<u>Promissory Note, Guaranty and Security Instruments</u>

16.     The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the non-specific, vague and conclusory allegations made in this paragraph and therefore denies such allegations.

17.     The Defendant admits the allegation made in this paragraph insofar as it pertains to SER.  By way of further answer, Defendant states, on information and belief, that Benson accepted the promissory note in satisfaction of the pre-existing indebtedness of SER.  By way of further answer, Defendant states that Benson has not tendered the $60,000 paid to Benson by SER, the promissory note does not contain a claw-back provision and that, and information and belief, the promissory note is not subject to the Guaranty allegedly given by Defendant.

18.     The Defendant admits that Exhibit B to the Complaint required SER to pay the instrument in full by May 14, 2020, with interest accruing upon a default.  The Defendant states by way of further answer that SER paid Benson at least $60,000 on account of the principal balance of the promissory note.  Except for the allegation specifically admitted herein, the Defendant does not have sufficient information at this time to form a reasonable belief regarding the implication that the provision was never altered, amended or modified by SER and Benson and therefore denies the implication.

19.     The Defendant admits that the promissory note in the form attached as Exhibit B to the Complaint contains language similar to that cited by Benson.  The Defendant states by way of further answer that the late fee and default rate interest is usurious and unconscionable and the result of overreaching by Benson.  Except for the allegation specifically admitted herein, the Defendant does not have sufficient information at this time to form a reasonable belief regarding the implication that the provision was never altered, amended or modified by SER and Benson and therefore denies the implication.

20.     The Defendant admits that the promissory note in the form attached as <u>Exhibit B</u> to the Complaint contains a provision that obligates SER to pay attorneys' fees and costs incurred by Benson" under the promissory note following a default.  The Defendant denies each and every other allegation and implication made by Plaintiff in this paragraph, except for those specifically admitted herein.  By way of further answer, Defendant states that the default interest and late fees are unconscionable if not usurious and that the Benson Note does not obligate him to pay attorneys' fees and that SER's obligation, if any, is limited as a matter of law to attorneys' fees reasonably incurred by Benson, as determined by a court of competent jurisdiction.

21.     The Defendant denies the allegation made in this paragraph.

22.     The Defendant admits that he signed the Promissory Note in the name and on behalf of SER, which is a Massachusetts limited liability company.

23.     The Defendant admits the allegation made in this paragraph.  By way of further answer, the Defendant states that (a) he signed the 2020 Guaranty attached to the Complaint as <u>Exhibit C</u> (the "Defendant's 2020 Guaranty") as part of the compromise and settlement of the debt that existed prior to the Compromise and Settlement Transaction and that (b) as interpreted by the Plaintiff, the Defendant received no consideration for the Guaranty and that it is illusory.

24.     The Defendant admits that the Promissory Note by its terms does not require "recourse necessary by the Lender against the Borrower or any collateral given to secure the Liabilities or against any other person liable for or on the Liabilities prior to proceeding against the undersigned."

25.     The Defendant admits that the Defendant's 2020 Guaranty in the form attached to the Complaint as <u>Exhibit C</u> contains a provision that requires him to pay reasonable attorneys' fees and certain related costs incurred by Benson after an Event of Default.  The Defendant

denies each and every other allegation and implication made in this paragraph, except for an allegation specifically admitted herein.  By way of further answer, the Defendant states that, as a matter of law, "reasonable attorneys' fees" includes the phrase "as determined by a court of competent jurisdiction."

26.     The Defendant admits that SER granted Benson the mortgage of 44 Highland St., Units 1 and 2, and 42 Highland St., Unit 1 in the form attached to the Complaint as Exhibit B (the "Condominium Mortgage").  The Defendant denies each and every other allegation and implication made in this paragraph, except for an allegation specifically admitted herein.  By way of further answer, Defendant states that (a) Attorney Michael Fadden,  a member in good standing of the Massachusetts Bar Association, had represented SER and the Defendant, as a member and manager of SER, in connection with the creation of a condominium located on and Highland Street in Lowell, Massachusetts (the "Highland Street Condominium") and other matters for many years, (b) the Mortgage in the form attached as Exhibit B to the Complaint (the "Benson Mortgage") was prepared by Attorney Michael Fadden, as counsel to SER, F Gorman, B Gorman and the Defendant ("SER-Defendant Counsel"), for the purpose of implementing the agreement to compromise and settle the Benson claims under the 2011 Line of Credit (the "Compromise and Settlement Transaction"), (c) the Defendant, as counsel to SER and Defendant, a member and manager of SER and justifiably and reasonably relied on by Defendant, (d) the Mortgage in the form attached as Exhibit B to the Complaint granted Benson a mortgage of the designated condominium units, (d) was accepted by Benson, who had the opportunity to examine the title of SER to the mortgaged condominium units, (e) Benson either knew or would have known had Benson examined title to the mortgaged condominium units that one of the units was subject to a mortgage held by 59 Newhall St., Realty Trust ("59 Newhall

Trust") and that (f) any loss or damage caused Benson resulted proximately from a professional

error made by Attorney Fadden, which was the supervening, independent cause thereof,

unknown to Defendant who signed the Mortgage in justifiable and reasonable reliance on

Attorney Fadden and for which Benson has filed an action against Attorney Fadden in

Massachusetts.

27.    The Defendant admits that SER executed the Security Instruments in the form

attached as Exhibit D to the Complaint in connection with the Promissory Note.  Except for the

allegation admitted herein, Defendant denies the other allegation and implication made by

Plaintiff in this paragraph.

28.    The Defendant admits the allegation or allegations made in this paragraph.  By

way of further answer Defendant states that (a) SER made 2 payments of $30,000 from the sales

of mortgaged condominium units, (b) SER made every possible  effort to pay the last $90,000

due under the Promissory Note but was prevented from doing so by the professional error

committed by Attorney Fadden and conduct of 59 Newhall Trust despite the fact that the last

condominium sale closing produced enough revenue to pay Benson and the balance due on the

construction loan made by 59 Newhall Trust to develop the Highland Street Condominium, (c)

59 Newhall Trust used a cross-collateral provision to take the $90,000 earmarked for Benson and

(d) on information and belief, knowing that Defendant, SER, F Gorman and B Gorman had little

or no money, Benson took no action to protect its rights with respect to the $90,000 and caused

or contributed substantially to the claim asserted in this case.

**SER's Partial Payments**

29.    The Defendant admits the allegations made in this paragraph.  By way of further

answer, Defendant states that (a) the payments constitute partial and substantial performance of

the compromise and settlement agreement and (b) Plaintiff has not refunded or offered to refund the $60,000 in payments to SER or the Defendant.

30.     The Defendant admits the allegations made in this paragraph.

31.     The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation made in this paragraph and therefore denies such allegation.

**Defendant's Allegedly Fraudulent Actions**

32.     The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

33.     The Defendant admits the allegations made in this paragraph.  By way of further answer, the Debtor states that Attorney Fadden  prepared the deed referred to in this paragraph and the Benson Mortgage on behalf of SER based on his knowledge of the Highland Street Condominium project, including the changes in addresses and unit numbers required by the US Postal Service and the City of Lowell and did not discuss the description of the Highland Street Unit to be mortgaged to Benson.

34.     The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation made in this paragraph and therefore denies such allegation.

35.     The Defendant denies each allegation made and unsupported belief and conclusion expressed in this paragraph.

36.     The Defendant denies the allegation made in this paragraph.

37.     The Defendant admits that Benson timely filed the Proof of Claim attached to the Complaint as <u>Exhibit F</u> in the bankruptcy case and <u>Exhibit F</u> is a true and correct copy of the Proof of Claim as of this date.  By way of further answer, the Debtor disputes the Benson Proof of Claim.

38.     The Defendant admits that William Franks filed against SER the Complaint attached as <u>Exhibit G</u> to the Complaint.  Except for the allegation specifically admitted herein, the Defendant denies each other allegation and implication made in such paragraph.  By way of further answer, the Defendant states that (a) the *Franks* Complaint is not evidence, (b) the *Franks* Complaint is irrelevant to this adversary proceeding, (c) Benson knows or should know from the public record that SER corrected the scrivener's error that led to the *Franks* Complaint and that (d) the *Franks* Complaint was attached to the Benson Complaint solely and exclusively for the purpose of prejudicing this court.

## COUNT I

### NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM FOR DEBT OWED UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

39.     The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

40.     The quotation of parts of Bankruptcy Code Section 5232(a)(2)(A) does not require an answer or any other response.

41.     The Defendant denies the allegation made in this paragraph.  By way of further answer, the Debtor states that (a) SER is a Massachusetts limited liability company governed by the Massachusetts limited liability company act, (b) the documents relied on by Benson are governed by Massachusetts law, (c) there is not even an  allegation that Defendant acted in any

capacity other than as a member or manager of SER when he signed the Benson Mortgage prepared by Attorney Fadden, (d) there is no allegation that Defendant knew of the mistake made by Attorney Fadden, (e) there is no allegation that any statement in the Guaranty given by Defendant was false, untruthful or even incorrect and that (f) the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company; and no member or manager of a limited liability company shall be personally liable, directly or indirectly, including, without limitation, by way of indemnification, contribution, assessment or otherwise, for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

42.    The Defendant denies the allegation made in this paragraph.

43.    The Defendant denies the allegations made in this paragraph.  By way of further answer, if and to the extent that Benson seeks to rescind or set aside the Compromise and Settlement Transaction, then the indebtedness arose before the transaction and cannot be the result of the transactions or the alleged, but  unspecified false representations as Benson admits by this reference to the "defaulted SER Credit Agreement; to the extent Benson does not seek to rescind the Compromise and Settlement Transaction, then it limits the amount of Defendant's liability, if any.

44.    The Defendant denies the allegations made and conclusions of fact and law expressed in this paragraph.

## COUNT II

## NON-DISCHARGABILITY OF PLAINTIFF'S CLAIM FOR DEBT OWED  UNDER SECTION 523(a)(2)(B) OF THE BANKRUPTCY CODE

45.     The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

46.     The quotation of parts of Bankruptcy Code Section 5232(a)(2)(A) does not require an answer or any other response.

47.     The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation made in this paragraph and therefore denies such allegation.  By way of further answer, the Defendant states that (a) he has no way of knowing what the phrase "[a]s set forth above" means,  (b) the Plaintiff fails to distinguish between SER and the Debtor by which he must mean the Defendant, (c) the Plaintiff fails to allege which of the "written Promissory Note, Security Instruments, and the Defendant's 2020 Guaranty constitutes a "statement in writing – . . . (ii) respecting the [Defendant's financial condition" within the meaning or Bankruptcy Code Section 523(a)(2)(B) or any of the other elements of the statute.

48.     The Defendant denies the allegations made in this paragraph.  By way of further answer, the Defendant states that (a) Attorney Fadden may have made a mistake when he prepared the Benson Mortgage, but on information and belief, the mistake was innocent and (b) an innocent mistake is not a false misrepresentation within the meaning of Bankruptcy Code Section 523(a).

49.     The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation made in this paragraph and therefore denies such allegation.  By way of further answer, the Defendant states that Benson does not allege that his reliance met the standards of the Code.

**50.**     The Defendant denies the allegations made in this paragraph.

**51.**     The legal and factual conclusion expressed in this paragraph does not require an answer or any other response.  To the extent an answer or response is necessary, the Defendant denies the conclusions.

**COUNT III**

**NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM FOR DEBT OWED UNDER SECTION 523(a)(4) OF THE BANKRUUPTCY CODE**

**52.**     The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

**53.**     The quotation of parts of Bankruptcy Code Section 5232(a)(4) does not require an answer or any other response.

**54.**     The Defendant denies the allegations made in this paragraph.  By way of further answer, the Defendant states that (a) he has no way of knowing what the phrase "[a]s set forth above" means,  (b) the Plaintiff fails to distinguish between SER and the Debtor by which he must mean the Defendant, (c) the Plaintiff fails to allege whether the claim made in this paragraph constitutes "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny or any specific fact that supports the allegation and (d) the Plaintiff fails to allege how Benson would have collected the money allegedly due on the "defaulted SER Credit Agreement or the Defendant's guaranty of that date or why the SER Credit Agreement remained enforceable despite the passage of time.

**55.**     The legal and factual conclusion expressed in this paragraph does not require an answer or any other response.  To the extent an answer or response is necessary, the Defendant denies the allegation made in this paragraph.

**COUNT IV**

**NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM FOR DEBT OWED UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE**

56.     The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

57.     The quotation of parts of Bankruptcy Code Section 5232(a)(6) does not require an answer or any other response.

58.     The Debtor denies the allegation made in this paragraph.  By way of further answer, the Defendant states that (a) the Defendant did not act willfully or maliciously within the meaning of the statute as Benson knows or should know if Benson made a reasonable investigation into the merits of the claims made in the Complaint before filing it and that (b) a mistake does not constitute a willful or malicious injury and that (c) Plaintiff has alleged no fact from which this court could find that Defendant acted willfully or maliciously within the meaning of the statute.

59.     The Defendant denies the allegations made in this paragraph.  By way of further answer, the Defendant states that the pre-existing Ordinary Course, Unsecured Trade Debt always was and remains dischargeable debt.

**AFFIRMATIVE DEFENSES AND DEFENSES**

60.     The Defendant hereby gives Plaintiff notice that Defendant intends to rely on, prove the following affirmative defenses:

a.     The Complaint and each Count thereof fails to satisfy the heightened pleading standard imposed by FRBP 7009 and FRCP 9.

b.     Accord and satisfaction.

     **c.**     Compromise and settlement.

     **d.**     The indebtedness compromised and settled by the Compromise Transaction – the allegedly defaulted SER Credit Agreement -- was never anything other than Ordinary Course, Unsecured Trade Debt that arose from the sale of goods on credit.

     **e.**     Benson knew that the Defendant, SER, Frank Gorman and Bryan Gorman were experiencing significant business and financial difficulties and that the amount due under the allegedly defaulted SER Credit Agreement was not recoverable as an unsecured claim and entered into the Compromise Transaction to improve its position with respect to some or all of the debt and benefited from the Compromise Transaction.

     **f.**     Affirmative negligence of Plaintiff.

     **g.**     Discharge and release.

     **h.**     Unconscionability.

     **i.**     Usury.

     **j.**     The original Ordinary Course, Unsecured Trade Debt under the SER Credit Agreement and the Guaranty thereof allegedly given by Defendant, which is the subject of the Benson Proof, was nothing more than debt for goods sold to SCR on open account that was and is dischargeable if revived in or as a result of this action.

     **k.**     The Plaintiff suffered no loss, harm or damage as a direct or proximate result of the acts, actions or statements complained of by the Plaintiff in the Complaint.as the result of any statement, act or action of the Defendant.

     **l.**     The Plaintiff has not restored the status quo before the compromise and settlement of the defaulted debt under the SER Credit Agreement and the Guaranty thereof

allegedly given by Defendant and cannot maintain any action or claim based on the original Ordinary Course, Unsecured Trade Debt.

       **m.**    The Compromise and Settlement Transaction is avoidable.

       **n.**    No mistake or other misconduct of a third-party professional in the course of his professional duties to the Defendant can be the basis for a claim being determined to be non-dischargeable against the Defendant.

       **o.**    The refusal of 59 Newhall to permit the payment of the $90,000 due Benson from SER under the terms of the Benson Note was the sole and proximate cause of the loss alleged by the Plaintiff.

       **p.**    The Plaintiff failed to join a necessary party.

       **q.**    Accord and satisfaction.

       **r.**    Contributory negligence.

       **s.**    Lack or failure of consideration.

       **t.**    Partial Payment.

       **u.**    Release.

       **v.**    Negligence and comparative negligence.

       **w.**    Statute of frauds.

       **x.**    Statute of limitations.

       **y.**    The Defendant cannot be held liable in his individual capacity for acts done, actions taken, and documents executed and delivered in the name and on behalf of a limited liability company.

   **z.**   Failure to plead the facts supporting the Plaintiffs claims on alleged fraudulent representations, false pretenses and actual fraud, embezzlement and larceny with the specificity required by Bankruptcy Rule 7009 or any specificity whatsoever.

   **aa.**  The Defendant did not knowingly make a false representation, or a false representation made in disregard of  the truth.

   **bb.**  The Defendant did not know that any statement made in Benson Mortgage prepared by Attorney Fadden wrong or any of the other documents executed in connection with the Compromise and Settlement Transaction was false or even when signed by him.

   **cc.**  The Compromise Transaction was not a deceit, artifice, trick or design involving direct and active operation of the Defendant's mind, used to circumvent and cheat Benson, which benefited from the Transaction, or the result of any wrongful intent.

   **dd.**  The Defendant made no statement that he did not believe to be true, did not have confidence in or did not have a reasonable basis for the statement.

   **ee.**  Benson did not justifiably or reasonably rely on any act, action or statement done, taken or made by Defendant.

   **ff.**  The Defendant did not intend to injure Benson and did not do any act, take any action or make any materially incorrect statement that was substantially certain to lead to the damage in question.

   **gg.**  The Defendant took no property of Benson through the Compromise Transaction with an intent to convert the property to the debtor's use without the consent of the owner nor does Benson make any allegation in the Complaint that would support a finding of embezzlement.

hh.     The Defendant did not wrongfully take any property of Benson without its consent and with intent to convert the property pursuant to the Compromise Transaction or with scienter -- the knowledge that the use is devoid of authorization nor does Benson make any allegation in the Complaint that would support a finding of larceny.

ii.     An avoidable transfer cannot be the basis of a non-dischargeable claim.

## CLAIM OBJECTION AND COUNTERCLAIM

The Defendant counterclaims against the Plaintiff and objects to Proof of Claim 11 filed by Benson under oath and penalties of perjury as follows:

**61.**     The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

**62.**     The Defendant commenced this bankruptcy case on November 15, 2022 (the "Petition Date").

**63.**     On or about January 24, 2023, Benson filed Proof of Claim 11 in this bankruptcy case (the "Benson Claim"). *Official Claims Register ("Claims Register"), Claim 11.*

**64.**     Benson asserts an unsecured claim against the Defendant as a guarantor in an amount not less than $406,419.93, which represents amounts allegedly due Benson for $261,103.34 in goods sold on open account to Southern End Realty ("SER") known as the original Ordinary Course, Unsecured Trade Debt, "a residential and commercial real estate company operated at least in part by" the Defendant, in the ordinary course of business and interest.

**65.**     Benson obscures the dates of the sale transactions by using the phrase "[a]s of the date of the Defendant's petition, SER purchased and received goods from Benson in the amount

of $261,103.34 but, in fact, those sales and a substantial portion of the interest claimed by Benson accrued before the Compromise Transaction.

66.     The sales were made to SER by Benson during the period // through //.

67.     On information and belief, Benson knew that SER, Frank, Bryan and Keith Gorman were experiencing serious financial problems on during late 2019 and early 2020 and that the claims asserted in the Benson Proof were unsecured, dischargeable claims.

68.      On information and belief, Benson demanded security for the payment of the Ordinary Course, Unsecured Trade Debt sometime prior to February 14, 2020 to improve its position with respect to the collection of the Ordinary Course, Unsecured Trade Debt vis-à-vis other creditors (the "Compromise Date").

69.     On or about February 14, 2020, SER, Frank Gorman, Bryan Gorman and Keith Gorman entered into the Compromise and Settlement Transaction.  On  information and belief, SER executed and delivered the $150,000 Benson Note, Benson Mortgage and the other documents described very generally in the Benson Proof, Frank, Bryan and Keith Gorman executed and delivered the Guaranties and Benson accepted such documents in compromise and full settlement of the Ordinary Course, Unsecured Trade Debt that existed prior to the Compromise and Settlement Transaction. In the Benson Proof, Benson does not identify specifically the mortgage given to it by SER as security for the Benson Note.  In addition, the Defendant and Frank Gorman and Bryan Gorman guaranteed the Ordinary Course, Unsecured Trade Debt.

70.     On February 14, 2020, neither SER, Frank Gorman, Bryan Gorman nor the Defendant owed Benson any money other than the Ordinary Course, Unsecured Trade Debt.

71.     On information and belief, the parties entered into the Compromise and Settlement Agreement to reduce the Ordinary Course, Unsecured Trade Debt to $150,000 (the "Compromised Ordinary Course, Unsecured Trade Debt") payable pursuant to the terms of the Benson Note in exchange for giving Benson some security for the payment of the Compromised Ordinary Course, Unsecured Trade Debt.

72.     Benson ignores the fact that (a) SER paid Benson the sum of $60,000 pursuant to the terms of the Benson Note from the sale of condominium units mortgaged to Benson pursuant to the Benson Mortgage and (b) there was in fact enough money from the net proceeds of the third condominium unit mortgaged to pay Benson the $90,000 remaining due Benson had 59 Newhall Street Realty Trust ("59 Newhall Street") not taken the money.

73.     On information and belief, Benson took no action to protect its interest in the $90,000 that would have paid the balance due Benson in full.

Compromise Transaction Limits Claim to $90,000 Dischargeable Claim.

74.     The balance due on the Compromise Transaction is at most $90,000, plus interest and reasonable attorneys' fees, costs and expenses, less payments, offsets, recoupments, and counterclaims.

## COUNTERCLAIM A

## BENSON CLAIM IS OVERSTATED.

75.      The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

76.     Benson has failed to provide a complete accounting for the balance due under the Benson Note.

77. On information and belief, Benson received substantial payments from Zaana-17 LLC, Defendant in *In re Zaana-17 LLC* ("*Zaana*" and the "Zaana Case") in addition to the $30,000 paid to Benson by SER from the proceeds of condominium units.

78. To the extent that Zaana paid Benson more than market prices for the goods sold to Zaana, the Defendant is entitled to a credit for the excess payment.

**COUNTERCLAIM  B**

**THE BENSON PROOF IS BARRED OR LIMITED BY
THE COMPROMISE AND SETTLEMENT TRANSACTION**

79. The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

80. The Plaintiff may not assert the Original Ordinary Course, Unsecured Trade Debt without first rescinding the Compromise and Settlement Transaction.

81. Rescission requires the party seeking rescission to restore the other party to the status quo ante – put the other party back in the same position that such party was in before the transaction.

82. SER paid Benson $60,000 pursuant to the Compromise and Settlement Transaction.

83. SER has not paid the $60,000 to SER or even offered to repay the money.

84. Benson has not acknowledged that if it rescinds the Compromise and Settlement Transaction it will have nothing more than an unsecured, non-priority claim against the Defendant.

85. As a result, Benson is not entitled to an unsecured breach of contract claim for the balance due under the Benson Guaranty given in connection with the Compromise Transaction.

Avoidance.

**WHEREFORE,** the Defendant respectfully requests that this Court to:

A.     Disallow the Benson Proof; and

B.     Grant Defendant such further relief as may fair and equitable, lawful or just.

## COUNTERCLAIM  C

## BENSON CLAIMS ARE AVOIDABLE UNDER CODE SECTION 544

86.     The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

87.     Defendant is a trustee within the meaning of Code Section 544, which is known as the strong-arm clause" of the Code.

88.     Under Code Section 544(a), the Defendant has:

As, of the commencement of the case, and without regard to any knowledge of the [Defendant] or of any creditor; the rights and powers of, or may avoid any transfer of property of the Defendant or any obligation incurred by the Defendant that is voidable by –

(1) a creditor that extends credit to the Defendant at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [and]

(2) a creditor that extends credit to the Defendant at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the Defendant that is returned unsatisfied at such time, whether or not such a creditor exists; . . . .

89.     Section 544(b) grants the Defendant the power to "avoid . . . any obligation incurred by the Defendant that is voidable under applicable law by a creditor holding an

unsecured claim that is allowable under section 502 of this title [11 USCS § 502] or that is not allowable only under section 502(e) of this title [11 USCS § 502(e)].

90.     The 2020 obligations incurred by the Defendant under the terms of Defendant's 2020 Benson Guaranty (the "2020 Benson Obligations") are "obligations" within the meaning of Code Section 544 and avoidable by the Defendant under Code Section 544 for the benefit of the estate and must be preserved for the benefit of the Defendant and the estate.

91.     The Defendant had one or more creditors that actually extended credit to the Defendant after the date on which the Defendant incurred the Benson Obligations.

92.     The Defendant is also a trustee and perfect, hypothetical lien and/or judgment creditor without any knowledge of the transactions by, between or involving the Defendant and Benson, including without limitation, the incurrence of the 202 Benson Obligations.

93.     The Defendant, as a "creditor [whether actual or hypothetical] that extended credit to the Defendant at the time of the commencement of the case," could have obtained on the Petition Date "with respect to such credit, a judicial lien on all property" of the estate.

94.     The Defendant, as creditor [whether actual or hypothetical] that extended credit to the Defendant at the time of the commencement of the case could have obtained on the Petition Date "with respect to such credit, an execution against the Defendant that is returned unsatisfied at such time." .

95.     Consequently, the incurrence of the 2020 Benson Obligations is avoidable *ab initio* under Code Section 544(a).

**WHEREFORE,** the Defendant respectfully requests this Court to:

A.     Avoid the Unsecured Benson Obligations complained of in this Count pursuant to Code Section 544;

**B.**     Order Benson to return all payments made by the Defendant on account of the

Benson Obligations to the Defendant pursuant to 11 U.S.C. §§ 544 and 550;

**C.**     Preserve for the benefit of the Defendant and the estate each Benson Obligation

complained of in this Count; and

**D.**     Grant the Defendant such additional relief as may prove to be fair and equitable,

just or lawful.

**COUNT VI**

**AVOIDANCE PURSUANT TO UFTA SECTION 545-A:4, I(b)**

**96.**     The Defendant re-alleges, reiterates and specifically incorporates by reference

each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if

set forth at length in this Count.

**97.**     Section 4, I(b) of the New Hampshire Uniform Fraudulent Transfer Act (the

"UFTA") read as follows:

> A transfer made, or obligation incurred by a Defendant is fraudulent as to
> a creditor, whether the creditor's claim arose before or after the transfer was made
> or the obligation was incurred, if the Defendant made the transfer or incurred the
> obligation:
> . . .
> (b) Without receiving a reasonably equivalent value in exchange for the
> transfer or obligation, and the Defendant:
>
>     (1)     Was engaged or was about to engage in a business or a
> transaction for which the remaining assets of the Defendant were unreasonably
> small in relation to the business or transaction; or
>
>     (2)     Intended to incur or believed or reasonably should have
> believed that he would incur debts beyond his ability to pay as they became due.

**98.**     The Defendant has one or more creditors whose claims arose before and after

Defendant incurred the financial liabilities and other obligations to Benson evidenced by the

Benson Guaranty.

99.     The Defendant incurred the 2020 Benson Obligations within 4 years of the Petition Date.

100.     The Defendant did not receive reasonably equivalent value for the Defendant's 2020 Guaranty nor did SER receive reasonably equivalent value for the 2020 Benson Note if, as Benson claims, it did not compromise and settle the original Ordinary Course, Unsecured Trade Debt.

101.     On information and belief, the Defendant was engaged on the Compromise and Settlement Transaction Date in the real estate development business for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction the Defendant as shown by events.

102.     On information and belief, the Defendant intended to incur or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due on and after the date of the Compromise and Settlement Transaction as shown by events.

103.     Consequently, 2020 Benson Obligations should be avoided  pursuant to UFTA Section 545-A:4, I(b).


        **WHEREFORE**, the Defendant respectfully requests that this Court to:

        A.     Avoid the Defendant's 2020 Benson Obligations.

        B.     Grant the Defendant such additional relief as may fair and equitable, just or lawful.

                                            Respectfully submitted,

DATED:  May 5, 2023                          /s/ William S. Gannon
                                            William S. Gannon, BNH 01222 (NH)

Counsel for

**KEITH GORMAN**

WILLIAM S. GANNON PLLC
740 Chestnut Street
Manchester NH  03104
PH: 603-621-0833
FX: 603-621-0830
bgannon@gannonlawfirm.com

### CERTIFICATE OF SERVICE

I hereby certify that on this date I served the foregoing notice on all persons and entities named on the CM/ECF Electronic Service List by causing it to be filed electronically via the CM/ECF filing system.

DATED:  May 5, 2023                    /s/ Jeanne Arquette-Koehler
                                       Jeanne Arquette-Koehler