UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KEITH GORMAN, | ) | Chapter 11 |
| | ) | Case No. 22-10563-BAH |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| BENSON LUMBER & HARDWARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 23-01003-BAH |
| | ) | |
| v. | ) | |
| | ) | |
| KEITH GORMAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| KEITH GORMAN, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. FADDEN, ESQ., | ) | |
| MICHAEL J. FADDEN, P.C. | ) | |
| | ) | |
| Third-Party Defendants. | ) | |
| | ) | |

**BENSON LUMBER & HARDWARE, INC.'S (I) RESPONSE TO
CLAIM OBJECTION AND (II) MOTION TO DISMISS
<u>DEFENDANT'S STATEMENT OF COUNTERCLAIMS</u>**

Benson Lumber & Hardware, Inc. ("<u>Benson Lumber</u>" or the "<u>Plaintiff</u>"), by and through

its undersigned attorneys, Sheehan Phinney Bass & Green PA, hereby (I) responds to the Claim

Objection incorporated in the Defendant's First Amended Answer, Affirmative Defenses and

{S2450483.1}

Counterclaims against Plaintiff (the "Answer") [Docket No. 37, Ex. A] and (II) moves this Court to dismiss Defendant's counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012. In support of this response and motion, Benson Lumber states as follows:

## FACTUAL BACKGROUND

On November 15, 2022, the Defendant, Keith Gorman ("Gorman" or the "Defendant") commenced this bankruptcy case.

On January 24, 2023, Benson Lumber timely filed a proof of claim with this Court (the "Benson Lumber Claim") [Claim No. 11]. The Benson Lumber Claim asserts an unsecured claim in the amount of not less than $406,419.93 on account of the Defendant's guaranty obligations for the liabilities of SER. The Benson Lumber Claim included an addendum and several exhibits, including the Guaranty executed by the Defendant on or about February 14, 2020 (the "2020 Guaranty") [Claim No. 11, Ex. C]. By the 2020 Guaranty, the Defendant guaranteed the payment and performance of any and all liabilities of SER then existing and thereafter arising. Id.

On March 3, 2023, Benson Lumber commenced this action by filing a complaint against the Defendant (the "Complaint") [Docket No. 1]. Benson Lumber incorporates the Complaint by reference in this pleading.[1]

In summary, the Complaint seeks a ruling of this Court that the Benson Lumber Claim is a non-dischargeable debt under Bankruptcy Code §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6). The central allegation made in the Complaint is that the Defendant fraudulently

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed in the Complaint.

{S2450483.1}   2

induced and deceived Benson Lumber into forbearing its collection action and obtaining access to new credit by offering a Promissory Note that was secured by a mortgage on three properties (the "Mortgage").  Complaint, Exs. B and D.  The problem, however, was that the Defendant caused one of the three properties to be sold to a third-party just weeks before the Promissory Note and Mortgage were executed.  This false representation, fraud and knowing and willful deception is the reason that the Benson Lumber Claim must be determined non-dischargeable.

On May 5, 2023, the Defendant filed his original answer to the complaint and asserted counterclaims against Benson Lumber [Docket No. 34].  On July 7, 2023, the Defendant amended that filing with the Answer.  The Answer may be more telling for what it does not say for all that it does.  The Answer does not refute that one of the properties offered as collateral was sold prior to the execution of the Promissory Note and related documents.  Instead of responding to the specific allegation that the property (Unit 1 at 42 Highland Street) included in the collateral package given to Benson Lumber on February 14, 2020 was actually sold to a third-party on January 17, 2020, see Complaint, ¶32, the Defendant's corresponding response in the Answer is merely:

> The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

Answer, ¶32.

The Answer tries to explain the collateral misrepresentation by arguing that Defendant's attorney made a mistake and that Benson Lumber should have been aware that "one of the units was subject to a mortgage held by 59 Newhall St. Realty Trust ("59 Newhall Trust")."  Answer, ¶26. But that explanation makes no sense.  The issue isn't that of mistake or that one of the units

was subject to a mortgage by 59 Newhall Trust. The issue is that the property had ALREADY been sold to a third-party prior to including it in Benson Lumber's collateral package. The Defendant and SER only had two properties to offer as collateral, but it offered, and purportedly conveyed, three. It is irrelevant that a property that was not the Defendant's to offer as collateral might have had a pre-existing mortgage. The Defendant purposefully seeks to distract from the issue: The Defendant provided collateral to Benson Lumber that it sold just weeks beforehand, and knew he did not own any interest in.

Rather than address or dispute the missing collateral issue, the Answer instead relies on mistake (without offering which other property that was owned by SER was supposed to be included in the collateral package) and an orchestrated argument that the Promissory Note and related agreements constituted a compromise of SER's debt to Benson Lumber. Relatedly, the Defendant also objects to the Benson Lumber Claim and brings counterclaims, all of which, if not dismissed, are more like elements of a claim objection for which the Defendant has failed to meet his burden.

## ARGUMENT

By his Answer, the Defendant objects to the Benson Lumber Claim and asserts counterclaims against Benson Lumber. But neither of these efforts to obfuscate the facts of the Complaint have merit. The claim objection should be overruled and the counterclaims dismissed.

### I. DEFENDANT HAS FAILED TO MEET HIS BURDEN OF PRESENTING SUBSTANTIAL EVIDENCE TO OVERCOME THE PRESUMPTION OF VALIDITY OF THE BENSON LUMBER CLAIM

Pursuant to Bankruptcy Rule 3001(f), "[a] proof of claim executed and filed in

accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).  A claim which comports with Rule 3001, such as Benson Lumber's claim, is entitled to a presumption of validity.  Id.  If a party in interest objects to a proof of claim, that party bears "the initial **burden of producing substantial evidence**" to overcome the presumption of validity to which a properly executed proof of claim is otherwise entitled.  Juniper Dev. Group v. Kahn (In re Hemingway Transp. Inc.), 993 F.2d 915, 925 (1st Cir. 1993)(Emphasis added).  Only if the objector meets its burden of substantial evidence, does the burden shift back to the claim-filing creditor to establish the allowability of the claim by a preponderance of the evidence.  Id.; see, e.g., American Express Bank v. Askenaizer (In re Plourde), 418 B.R. 495, 504 (B.A.P. 1st Cir. 2009) ("If the objection is substantial, the claimant 'is required to come forward with evidence to support its claims . . . and bears the burden of proving its claims by a preponderance of the evidence.'"), quoting, Tracey v. United States (In re Tracey), 394 B.R. 635, 639 (B.A.P. 1st Cir. 2008)); Ezenia! Inc. v. Nguyen (In re Ezenia! Inc.), 536 B.R. 485, 496 (Bankr. D. N.H. 2015).

The Defendant's claim objection advances **no** evidence or any support for the denial or reduction of the Benson Lumber Claim, much less the "substantial evidence" required to overcome the presumption of validity which the Benson Lumber Claim enjoys.  Instead, the Defendant distracts from the significant allegations that support a finding of non-dischargeability of Benson Lumber's claim by making a conclusory and self-serving argument of the existence of a "Compromise and Settlement Transaction."  Answer, pp. 4, 19-20.  In doing so, the Defendant acknowledges the underlying debt that supports the Benson Lumber Claim but wishes it away by arguing that his false representations and fraudulent conduct that led to the Promissory Note,

2020 Guaranty and related agreements should be viewed as a compromise and satisfaction of the debt that he guaranteed.  These arguments are not persuasive.

First, the Defendant's calling the Promissory Note, the 2020 Guaranty and related agreements a "Compromise and Settlement Transaction" does not make it so.  There is no provision in those documents and the Defendant cites none that support his allegation of compromise.  Indeed, the opposite exists.  By a plain reading of the 2020 Guaranty, the Defendant unconditionally provides a guaranty of any and all SER debt then existing or thereafter arising.  Any argument by Defendant that this guaranty was somehow limited is belied by the explicit provisions of the 2020 Guaranty.  Second, and more importantly, using a transaction that has been alleged as fraudulent by Benson Lumber, and which Defendant's response denies fraud but admits mistake, cannot be the basis upon which the Benson Lumber claim is denied or reduced.  Finally, there continues to be a fatal flaw in Defendant's response to Benson Lumber's allegations.  As noted above, Benson Lumber has clearly established that the collateral package offered by the Defendant was not what the Defendant represented.  The Defendant does not refute that the property was sold <u>prior</u> to its inclusion in the collateral package, a fact that the Defendant knew as he signed both (i) the deed that transferred the property on January 17, 2020 (<u>see</u> Complaint, Ex. E) and (ii) the Promissory Note and related documents listing the same property as collateral on February 14, 2020 (<u>see</u> Complaint, Exs. B-D).  Thus, it would be highly inequitable for the Benson Lumber Claim to be compromised as a result of the Defendant's own misrepresentations.

For the reasons stated above, the Defendant's objection to the Benson Lumber Claim should be overruled and determined to be non-dischargeable.

## II. DEFENDANT HAS FAILED TO STATE ANY PLAUSIBLE CLAIM FOR RELIEF

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, the court employs a two-step approach. See Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, the court screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id.  Second, the court credits as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determines if those allegations and inferences support a claim upon which relief might be granted. Id.  Courts may augment those pleaded facts and inferences with information from "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

The "make-or-break standard" set by Rule 12(b)(6) is that the allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Deep's of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

### A. Defendant's Claim that Benson Lumber's Proof of Claim Must be Disallowed or is Not Valid or Enforceable to the Extent it Includes Penalties (Counts A and A-1) Should be Dismissed

These Counts would appear to be a continuation of, or otherwise included in, the Defendant's claim objection.  Benson Lumber incorporates its argument opposing the claim

objection (see Section I), noting, again, that Defendant advances no evidence for the denial or reduction of the Benson Lumber Claim, much less the "substantial evidence" required to overcome the presumption of validity of the claim.  Instead, the Defendant argues for a "complete accounting for the balance due under the Benson Note" and then suggests, "on information and belief," that other payments were received by Benson Lumber from an entity related to the Defendant.

To the extent a full accounting is requested, Benson Lumber set forth in its Proof of Claim various supporting documents and noted that "[c]opies of any additional pertinent documents that support this Proof of Claim are available upon request."  Proof of Claim #11.  The Defendant has made no request to Benson Lumber for additional supporting information.

The Defendant's other allegation in support of Count A is equally unpersuasive.  The Defendant speculates, "on information and belief," that payments have been made by a related entity, Zaana-17 LLC ("Zaana").  Answer, ¶79.  The Defendant does not allege the amount of any such payments or whether those payments were somehow improperly applied; the Defendant merely asserts that payments were made.  In a non-sequitur, the Defendant concludes Count A with a general statement (not even an allegation) that has no support anywhere in the Answer that the Defendant is entitled to credit for any excess payments made by Zaana that exceeded market prices.  Answer, ¶80.  These bald allegations are exactly the type that the Court can safely ignore.  LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)( The Court must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored.")

Count A-1 suffers from a similar lack of support, starting with the assertion that "Benson seeks to recover a 10% late fee, interest at a 'default rate of 25%' and 'attorneys' fees following an alleged default.'" Answer, ¶82. This is an argument of the Defendant's own making and is contradicted by the Benson Lumber Claim. The Benson Lumber Claim makes no request for a late fee, applies the permissible monthly 1.5% late fee and only seeks reasonable fees incurred in collection of the debt. Proof of Claim #11. The Defendant acknowledges that all of these sums are properly included in any Benson Lumber Claim. Answer, ¶84. As such, the allegations of unenforceable penalties are without merit and simply a distraction. The Benson Lumber Claim clearly does not include the items that the Defendant complains.[2]

At best, these Counts are duplicative of the claim objection with the same infirmities. Accordingly, Counts A and A-1 must be dismissed.

### B. Defendant's Claim that Benson Lumber's Proof of Claim is Barred or Limited by the Compromise and Settlement Transaction (Count B) Should be Dismissed

Returning once again to the Benson Lumber Claim, Count B is yet another element of the claim objection and not properly a counterclaim. Benson Lumber incorporates its argument opposing the claim objection (see Section I), noting, again, that Defendant advances no evidence for the denial or reduction of the Benson Lumber Claim, much less the "substantial evidence" required to overcome the presumption of validity of the claim.

In Count B, the Defendant reintroduces the argument that the Promissory Note, 2020 Guaranty and related documents constituted a compromise of all existing debts owed to Benson

---

[2] Benson Lumber acknowledges that the form of promissory note that SER and the Defendant's own counsel prepared included a 25% default interest rate. But Benson Lumber has never applied that interest rate, instead relying on the 1.5% late charge allowed under the SER Credit Agreement.

{S2450483.1}   9

Lumber and guaranteed by the Defendant. As already argued, the Defendant offers no proof or evidence of any such compromise, and all other related arguments are wholly without merit. Somehow, the Defendant argues that absent Benson Lumber's rescission of the 2020 transaction that it was fraudulently induced into entering, Benson Lumber's claim should be compromised. In addition to being nonsensical, it is a remarkably convenient means of eliminating or disallowing (as the Defendant requests) a valid claim. Like Counts A and A-1, this is duplicative of the claim objection with the same infirmities. Accordingly, Count B must be dismissed.

### C. Defendant's Claim that Benson Lumber's Claims Are Avoidable Under Bankruptcy Code Section 544 (Counts C and C-1) and UFTA Sections 545-A:4, I(b) and 545-A:5,I (Counts D and E) Should be Dismissed

Turning his own fraudulent conduct on its head, the Defendant seeks to avoid his guaranty obligations and to recover transfers made by SER and or the Defendant as being fraudulent under 11 U.S.C. §§ 544(a) and (b) and NH RSA 545-A:4(I)(b) and 545-A:5,I. But the counterclaims are patently deficient for a whole host of reasons.

As a threshold matter, the Defendant is relying upon his own fraud for material elements of his claims. At bottom, the Defendant is saying that Benson Lumber should not have agreed to forbear and extend additional credit because SER had no ability to repay the Promissory Note. This ignores that SER did have the ability to repay the portion of that note for which it offered legitimate, actual collateral. The only reason that SER could not repay the final portion of that note, thus triggering the Defendant's guaranty, is because SER and the Defendant provided false collateral. If the collateral package had been complete, then SER would have finished and sold the unit for which it sought Benson Lumber's additional credit and satisfied the Promissory Note. But the collateral package was not what was represented by the Defendant. The Defendant

disregards this critical element of the Complaint and ignores his own fraudulent conduct. Remarkably, the Defendant argues that because the collateral that was offered to Benson Lumber did not really exist, SER did not have the ability to repay the Promissory Note and the resulting guaranty obligation should be set aside. The Defendant should not be granted that luxury of relying on his own fraud to create a defense to the claim or even worse to assert counterclaims. For these reasons alone, the Defendant's claims of avoidance and fraudulent transfer are defective and should be dismissed.

Even if the Defendant's own fraud could establish grounds for avoidance or a fraudulent transfer claim, the counterclaims fail as a matter of law. In Count C, the Defendant seeks to have the 2020 Guaranty avoided pursuant to Section 544(a) of the Bankruptcy Code. Benson Lumber concedes, as the Defendant notes (Answer, ¶105), that Section 544(a) provides standing and a procedural vehicle for a debtor or trustee to avoid an unperfected security interest under the rights and powers of a judicial lien creditor under applicable non-bankruptcy law. Benson Lumber has not asserted that the 2020 Guaranty was a secured obligation of the Defendant. Benson Lumber has filed an unsecured claim based, in part, on the 2020 Guaranty and seeks to have that claim determined to be non-dischargeable. Section 544(a) of the Bankruptcy Code has no application to this matter and, in any event, the Defendant seems to be suggesting that "avoidance" means eliminate rather than rendering any successfully challenged secured interest to unsecured debt. By any fair reading of the Defendant's counterclaim, any claim, secured or unsecured, is subject to challenge under Section 544(a) of the Bankruptcy Code and can be the means for a disallowance of that debt. That is not the operation of Section 544(a) of the Bankruptcy Code. Count C should be dismissed.

The Defendant next turns to Section 544(b) of the Bankruptcy Code (Count C-1). Section 544(b)(1) authorizes a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1).  Hence, under Section 544(b), the trustee may avoid a transfer of an interest of the debtor or an obligation incurred by the debtor that is voidable under applicable non-bankruptcy law.  Here, the Defendant asserts that the "applicable law" for purposes of Section 544(b) is the New Hampshire Uniform Fraudulent Transfer Act.

The power given to a trustee under Section 544(b) to avoid a transfer or obligation is derivative, that is, there must be an actual existing creditor holding an allowable unsecured claim who would have had that right outside of bankruptcy.  In other words, "to succeed under § 544(b), 'the trustee must show that the transfer is voidable under state law by at least one unsecured creditor of the bankruptcy estate with an allowable claim.'"  Ford v. Blaine, 2006 Bankr. LEXIS 2019, *9 (Bankr. D. N.H. 2006) (quoting Williams v. Marlar (In re Marlar), 267 F.3d 749, 753 (8th Cir. 2001)).

Since the Defendant is proceeding under Section 544(b)(1),

> In order to avoid the transfer in question, the trustee 'not only must show that the conditions of state law have been satisfied, but also that, at the time that the transaction at issue occurred, there was in fact a creditor in existence who was holding an allowed unsecured claim, and second that the transaction could have been avoided by such creditor under applicable state law.'

Blaine, 2006 Bankr. LEXIS at *10 (quoting Young v. Paramount Communications Inc. (In re Wingspread Corp.), 178 B.R. 938, 945 (Bankr. S.D.N.Y. 1995)).  Having failed to identify the existence of a creditor at the time of the challenged transfer who held an allowed unsecured

claim on the petition date in his original answer, the Defendant now makes a general statement that certain specified creditors, "on information and belief," had unsecured claims on or before February 14, 2020. Answer, ¶117. But it is not at all clear the status of those creditors' claims at the time of the 2020 Guaranty or that one was holding an allowed unsecured claim. Indeed, the Defendant acknowledges that certain of the claims are contingent claims. Answer, ¶157. As a result, the Defendant lacks standing to assert Counts C-1, D and E and those counts should be dismissed without further consideration.

Even if standing exists, the Counts have other failings. First, as a preliminary matter, the Defendant blurs or otherwise ignores the distinction between himself and SER. As admitted in the Answer, the Defendant guaranteed the obligations of SER. The 2020 Guaranty was unconditional and required the payment and performance of any and all liabilities of SER then due and arising thereafter. See Complaint, Exhibit C. Benson Lumber has asserted an unsecured claim on account of the Defendant's guaranty of the full amount of the SER liability. Yet, the Defendant seeks to focus on SER's financial condition with one very notable exception. At the time of the 2020 agreement, SER was capable of offering mortgages on properties to secure forbearance and additional credit. That arrangement fell apart because the collateral package was not what was represented, but at the time SER was granting mortgages on property.

Second, the Defendant has failed to adequately plead the elements of a constructively fraudulent transfer claim. "[T]he elements of fraudulent transfer claims vary depending upon the specific statute, but in general, each requires an allegation of a transfer of the debtor's property that was made, while the debtor was insolvent, undercapitalized or unable to pay its debts as they matured, for which the debtor received less than reasonably equivalent value." Official Comm.

of Unsecured Creditors v. Foss (In re Felt Mrg. Co.), 371 B.R. 589, 635-36 (Bankr. D. N.H. 2007). Here, the Defendant makes unsubstantiated claims that SER and he were insolvent at the time of the 2020 Guaranty, reviewing recent bankruptcy filings and citing IRS submissions. Critically, though, the collateral package that was purportedly being offered to Benson Lumber was of properties that had equity and would permit repayment of the Promissory Note when completely developed and sold to third parties. And indeed, despite the Defendant's allegations in the Answer of the inability to meet obligations, two of the three properties did, in fact, result in sales that caused payments to Benson Lumber. The Defendant wants to simply ignore that the omission of the third property is the fraud here, and relies on its exclusion from the collateral package as proof of insolvency and the inability to pay debts when due. This fatal pleading deficiency alone should result in Counts C-1, D and E being dismissed.

  Even assuming that these Counts can be maintained by the Defendant (not SER) and that his insolvency was adequately pled, the Defendant's counterclaims must contain sufficient allegations that demonstrate he did not receive reasonably equivalent value for the transfer. This pleading requirement obligates a plaintiff to use "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Additionally, a plaintiff's conclusory allegations that the debtor did not receive reasonably equivalent value, "[s]tanding alone, . . . merely parrot the relevant statutory provision and do not provide a factual foundation that would permit a court to conclude that the Complaint states a plausible claim for relief." Goldstein v. BRT, Inc. (In re Universal Mktg., Inc.), 460 B.R. 828, 837 (Bankr. E.D. Pa. 2011). But the Defendant's counterclaims do exactly that. In fact, Counts C-1, D and E are the exact "parroting" of Bankruptcy Code Section 544 and NH RSA 545-

A:4(I)(b) and 545-A:5, I that <u>Goldstein</u> warns against. The Defendant provides no substantive allegations other than quotes of the relevant statutes and blanket statements.

Notwithstanding the Defendant's failure to adequate plead a lack of reasonably equivalent value, as alleged in the Complaint, absent the issuance of the Promissory Note, 2020 Guaranty and related agreements, Benson Lumber was prepared to move forward with collection activities. But by the granting of the Promissory Note secured by the properties and the execution of 2020 Guaranty, Benson Lumber also continued to extend credit to SER. After the issuance of the Promissory Note, SER managed to complete and sell additional properties, even pay down the Promissory Note and make payments to other creditors, which materially benefitted SER and the Defendant. Based on these facts alone, the Defendant's thin-bare allegation of a lack of receipt of reasonably equivalent value is without merit.

In summary, the Claim Objection and related counterclaims should be overruled and dismissed, respectively. Indeed, other than the meritless Counts C, C-1, D and E, the counterclaims are just disguised objections to the Benson Lumber Claim. The relief sought by the Defendant should be denied.

## **WAIVER OF MEMORANDUM OF LAW**

Benson Lumber requests that the Court waive and dispense with the requirements set forth in LBR 7102(b)(2) that any motion filed shall have an accompanying memorandum of law. The legal authorities upon which Benson Lumber relies are set forth in the Motion. Accordingly, Benson Lumber submits that a waiver of the LBR 7102(b)(2) requirement is appropriate under these circumstances.

WHEREFORE, Benson Lumber respectfully requests that this Court enter an Order (1) overruling the Defendant's objection to Benson Lumber's Claim, (2) dismissing the Defendant's counterclaims, and (3) granting Benson Lumber such other and further relief as this Court may deem just and proper.

                Respectfully Submitted,

                BENSON LUMBER AND HARDWARE, INC.

                By its Attorneys,

Dated: August 2, 2023        /s/ Christopher M. Candon
                Christopher M. Candon (BNH 07285)
                Sheehan Phinney Bass & Green PA
                1000 Elm Street, P.O. Box 3701
                Manchester, New Hampshire 03105-3701
                (603) 627-8168
                ccandon@sheehan.com

## **CERTIFICATE OF SERVICE**

I, Christopher M. Candon, hereby certify that on this 2nd day of August, 2023, a copy of the foregoing was served on all parties receiving notice via the Court's CM/ECF electronic filing system.

*/s/ Christopher M. Candon*
