## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | CHAPTER 11 |
| Keith Gorman, | Case No. 22-10563-BAH |
| Debtor. | |
| Benson Lumber & Hardware, Inc., | |
| Plaintiff, | |
| v. | Adv. Pro. No. 23-01003-BAH |
| Keith Gorman, | |
| Defendant, | |
| Keith Gorman, | |
| Third-Party Plaintiff, | |
| v. | |
| Michael J. Fadden, Esq. and Michael J. Fadden, P.C., | |
| Third-Party Defendants. | |

## DEFENDANT'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS AGAINST PLAINTIFF

Defendant and Debtor-in-Possession, **Keith Gorman** (the "Defendant" or "Mr. Gorman") respectfully answers the Complaint filed by Benson Lumber & Hardware, Inc. (the "Complaint" and "Plaintiff" or "Benson"), gives notice of the affirmative defenses to the claims made by the Plaintiff on which he may rely at trial and counterclaims against the Plaintiff as follows:

### I.        JURISDICTION AND VENUE

**1.**      The Defendant admits the allegation made in this paragraph.

**2.**      The Defendant admits the allegation made in this paragraph.

**3.**      The Defendant admits the allegation made in this paragraph.

## II.  PARTIES

**4.**      The Defendant admits the allegations made in this paragraph.

**5.**      The Defendant admits each allegation made in this paragraph.

## III.    FACTS

**6.**      The Defendant admits the allegation made in this paragraph.

**7.**      The Defendant admits that Southern End Realty ("SER") is a  limited liability company that is or was engaged in the business of residential and commercial real estate development.  Except for the allegation or allegations specifically admitted herein, the Defendant does not have sufficient information at this time to form a reasonable belief as to the completeness and truth of any other allegation made in this paragraph and, therefore, denies each such allegation.

**8.**      The Defendant admits that (a) Frank Gorman ("F Gorman" or "FG") is his father, (b) Bryan Gorman ("B Gorman" or "BG") is his brother, (c) SER is a limited liability company and that (d) Defendant is a manager of SER.  Except for each allegation specifically admitted herein, the Defendant denies each and every other allegation made in this paragraph.

**A.**      **SER Credit Agreement**

**9.**      The Defendant admits the allegations made by Plaintiff in this paragraph subject to any limitations on the validity and enforceability of the SER Credit Agreement (the "2011 SER Credit Agreement" and "2011 Line of Credit") under applicable law, the Compromise and Settlement Transaction entered into by Benson, Defendant, SER, F Gorman and B Gorman, the affirmative negligence of Benson and other events and matters.  By way of further answer, the Defendant states that (a) the purpose of the 2011 Line of Credit was to permit SER to purchase

building supplies and materials used in its business on open account and credit ("Ordinary Course, Unsecured Trade Debt"), (b) the 2011 Line Of Credit was limited to $15,000 as shown by Exhibit A to the Complaint (the "2011 SER Credit Limit"), (c) Benson deliberately, intentionally or through affirmative negligence failed to monitor the 2011 SER Credit Agreement and ensure that SER did not exceed the 2011 Line of Credit Limit and (d) on information and belief, F Gorman and B Gorman, who are now Chapter 7 Debtors, also executed limited guaranties of open account, trade debt incurred for purchases made from Benson for ("Ordinary Course, Unsecured Trade Debt") subject to the limits of their liability under the guaranties and the validity and enforceability thereof.

10.     The Defendant admits that he signed the Guaranty, which is a part of the 2011 SER Credit Agreement attached to the Complaint as Exhibit A (the "2011 Benson-Keith Gorman Unsecured Guaranty") and that he guaranteed the payment of up to $15,000 of Ordinary Course, Unsecured Trade Debt subject to any limitations on the validity and enforceability thereof imposed by law or equity.  By way of further answer, the Defendant states that, on information and belief, F Gorman and B Gorman are jointly and severally obligated to Plaintiff on account of guaranties given by them in connection with 2011 SER Credit Agreement up to $15,000 to the extent that any of the guaranties remain valid and enforceable despite the passage of time.

11.     The Defendant admits the allegation made in this paragraph.  By way of further answer, Defendant states that the provision was superseded by the provision at the bottom of the same page that states that "1%" and was approved and initialed by "BNB," who is on information and belief Bradly Benson, the President and majority equity holder of Plaintiff.

12.     The Defendant admits that the SER Credit Agreement includes text that may create a contractual obligation to pay costs of collection, including reasonable legal fees if legal

action is taken to enforce the SER Credit Agreement.  By way of further answer, Defendant states that the agreement is no longer enforceable against Defendant and that it was never enforceable in any amount greater than $15,000.

13.    The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation that "[p]ursuant to the SER Credit Agreement, SER purchased goods from Benson" and therefore denies such allegation.  Except for the allegation or allegations denied herein, Defendant admits that SER received goods from Benson.

14.    The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation made in this paragraph and therefore denies such allegation.  By way of further answer, Defendant states that (a) the indebtedness for the purchased goods, the interest and attorneys' fees claimed by Benson in the Benson Proof of Claim were and are to the extent still outstanding nothing more than Ordinary Course, Unsecured Trade Debt which was uncollectible, (b) Benson, SER, F Gorman, B Gorman and the Defendant entered in an agreement to compromise and settle the Trade Debt for $150,000, without interest (the "Compromise and Settlement Transaction"), and (c) SER paid $60,000 of the $150,000 and would have paid it all but for the error made by counsel to SER and 59 Newhall Street Realty Trust's refusal to permit SER to pay the last $90,000 due Benson on the Compromise and Settlement Transaction by invoking a cross-collateral provision over SER's objection which proved to be beyond its control.

15.    The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegations made in this paragraph and therefore denies such allegations.

B.    **2020 Benson-SER Note, Guaranty and Security Instruments**

16.    The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the non-specific, vague and conclusory allegations made in this paragraph and therefore denies such allegations.

17.    The Defendant admits the allegation made in this paragraph insofar as it pertains to SER.  By way of further answer, Defendant states, on information and belief, that Benson accepted the $150,000 2020 Benson-SER Note attached as Exhibit B (the "2020 Benson-SER 2020 Benson-SER Note") in satisfaction of the pre-existing indebtedness of SER on account of the Ordinary Course, Unsecured Trade Debt (the "2020 Compromise and Settlement Transaction").  By way of further answer, Defendant states that Benson has not tendered the $60,000 paid to Benson by SER, the Benson-SER Note does not contain a claw-back provision and that, and information and belief, the Benson-SER Note is not subject to the 2011 Benson-Keith Gorman Unsecured Guaranty allegedly given by Defendant.

18.    The Defendant admits that Exhibit B to the Complaint by its terms required SER to pay the instrument in full by May 14, 2020, with interest accruing upon a default.  The Defendant states by way of further answer that SER paid Benson at least $60,000 on account of the principal balance of the Benson-SER Note.  Except for the allegation specifically admitted herein, the Defendant does not have sufficient information at this time to form a reasonable belief regarding the implication that the provision was never altered, amended or modified by SER and Benson and therefore denies the implication.

19.    The Defendant admits that the 2020 Benson-SER Note in the form attached as Exhibit B to the Complaint contains language similar to that cited by Benson.  The Defendant states by way of further answer that the late fee, default rate interest and obligation to pay

attorneys' fees constitute a penalty and are usurious and unconscionable and the result of overreaching by Benson.  Except for the allegation specifically admitted herein, the Defendant does not have sufficient information at this time to form a reasonable belief regarding the implication that the provision was never altered, amended or modified by SER and Benson and therefore denies the implication.

20.     The Defendant admits that the 2020 Benson-SER Note in the form attached as Exhibit B to the Complaint contains a provision that obligates SER to pay attorneys' fees (without regard to reasonableness) and costs incurred by Benson under the 2020 Benson-SER Note following a default.  The Defendant denies each and every other allegation and implication made by Plaintiff in this paragraph, except for those specifically admitted herein.  By way of further answer, Defendant states that the default interest, late fees, and attorneys' fees are unconscionable if not usurious and that the 2020 Benson-SER Note does not obligate the Defendant to pay attorneys' fees and that SER's obligation, if any, is limited as a matter of law to attorneys' fees reasonably incurred by Benson, as determined by a court of competent jurisdiction.

21.     The Defendant denies the allegation made in this paragraph.

22.     The Defendant admits that he signed the 2020 Benson-SER Note as Manager of SER, which is a Massachusetts limited liability company.

23.     The Defendant admits the allegation made in this paragraph.  By way of further answer, the Defendant states that (a) he signed the 2020 Benson-Keith Gorman Guaranty attached to the Complaint as Exhibit C (the "Defendant's 2020 Guaranty") as part of the Compromise and Settlement Transaction and that (b) as interpreted by the Plaintiff, the Defendant received no consideration or reasonably equivalent value for the Guaranty.

24.     The Defendant admits that the 2020 Benson-SER Note by its terms does not make any "recourse necessary by the Lender against the Borrower or any collateral given to secure the Liabilities or against any other person liable for or on the Liabilities prior to proceeding against the undersigned."

25.     The Defendant admits that the Defendant's 2020 Benson-Keith Gorman Guaranty in the form attached to the Complaint as Exhibit C contains a provision that requires him to pay reasonable attorneys' fees and certain related costs incurred by Benson after an Event of Default. The Defendant denies each and every other allegation and implication made in this paragraph, except for an allegation specifically admitted herein.  By way of further answer, the Defendant states that, as a matter of law, "reasonable attorneys' fees" includes the phrase "as determined by a court of competent jurisdiction."

26.     The Defendant admits that SER granted Benson the mortgage of 44 Highland St., Units 1 and 2, and 42 Highland St., Unit 1 in the form attached to the Complaint as Exhibit B (the "Condominium Mortgage").  The Defendant denies each and every other allegation and implication made in this paragraph, except for an allegation specifically admitted herein.  By way of further answer, Defendant states that (a) Attorney Michael Fadden,  a member in good standing of the Massachusetts Bar Association, had represented SER and the Defendant, as a member and manager of SER, in connection with the creation of a condominium located on and Highland Street in Lowell, Massachusetts (the "Highland Street Condominium") and other matters for many years, (b) the Mortgage in the form attached as Exhibit B to the Complaint (the "2020 Benson-SER Mortgage") was prepared by Attorney Michael Fadden, as counsel to SER, F Gorman, B Gorman and the Defendant ("SER-Defendant Counsel"), for the purpose of implementing the agreement to compromise and settle the Benson claims under the 2011 SER

Line of Credit, (c) the Defendant, as counsel to SER and the Defendant, a member and manager of SER and justifiably and reasonably relied on counsel to SER and him to prepare documents that were accurate and true, (d) the Mortgage in the form attached as Exhibit C to the Complaint (the "2020 Benson-SER Mortgage") granted Benson a mortgage of the designated condominium units, (d) was accepted by Benson, who had the opportunity to examine the title of SER to the mortgaged condominium units, (e) Benson either knew or would have known had Benson examined title to the mortgaged condominium units that one of the units was subject to a mortgage held by 59 Newhall St., Realty Trust ("59 Newhall Trust") and that (f) any loss or damage caused Benson resulted proximately from a professional error made by Attorney Fadden, which was the supervening, independent cause thereof, unknown to Defendant who signed the Mortgage in justifiable and reasonable reliance on Attorney Fadden and for which Benson has filed an action against Attorney Fadden in Massachusetts.

27.    The Defendant admits that SER executed the Security Instruments in the form attached as Exhibit D (the "2020 Security Instruments") to the Complaint in connection with the Compromise and Settlement Transaction.  Except for the allegation admitted herein, Defendant denies the other allegation and implication made by Plaintiff in this paragraph.

28.    The Defendant admits the allegation or allegations made in this paragraph.  By way of further answer Defendant states that (a) SER made 2 payments of $30,000 from the sales of mortgaged condominium units, (b) SER made every possible  effort to pay the last $90,000 due under the 2020 Benson-SER Note but was prevented from doing so by the professional error committed by Attorney Fadden and the conduct of 59 Newhall Trust despite the fact that the last condominium sale closing produced enough revenue to pay Benson and the balance due on the construction loan made by 59 Newhall Trust to develop the Highland Street Condominium, (c)

59 Newhall Trust used a cross-collateral provision to take the $90,000 earmarked for Benson and (d) on information and belief, knowing that Defendant, SER, F Gorman and B Gorman had little or no money, Benson took no action to protect its rights with respect to the $90,000 and caused or contributed substantially to the claim asserted in this case.

**SER's Partial Payments**

**29.** The Defendant admits the allegations made in this paragraph.  By way of further answer, Defendant states that (a) the payments constitute partial and substantial performance of the Compromise and Settlement Transaction and (b) Plaintiff has not refunded or offered to refund the $60,000 in payments to SER or otherwise restore the status quo ante.

**30.** The Defendant admits the allegations made in this paragraph.

**31.** The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation made in this paragraph and therefore denies such allegation.

**Defendant's Allegedly Fraudulent Actions**

**32.** The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

**33.** The Defendant admits the allegations made in this paragraph.  By way of further answer, the Defendant states that Attorney Fadden  prepared the deed referred to in this paragraph and the 2020 Benson-SER Mortgage on behalf of SER based on his knowledge of the Highland Street Condominium project, including the changes in addresses and unit numbers required by the US Postal Service and the City of Lowell and did not discuss the description of the Highland Street Unit to be mortgaged to Benson.

**34.**     The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation made in this paragraph and therefore denies such allegation.

**35.**     The Defendant denies each allegation made and unsupported belief and conclusion expressed in this paragraph.

**36.**     The Defendant denies the allegation made in this paragraph.

**37.**     The Defendant admits that Benson timely filed the Proof of Claim attached to the Complaint as Exhibit F (the "Benson Proof") in the bankruptcy case and Exhibit F is a true and correct copy of the Proof of Claim as of this date.  By way of further answer, the Defendant disputes the Benson Proof.

**38.**     The Defendant admits that William Franks filed against SER the Complaint attached as Exhibit G to the Complaint.  Except for the allegation specifically admitted herein, the Defendant denies each other allegation and implication made in such paragraph.  By way of further answer, the Defendant states that (a) the *Franks* Complaint is not evidence, (b) the *Franks* Complaint is irrelevant to this adversary proceeding, (c) Benson knows or should know from the public record that SER corrected the scrivener's error that led to the *Franks* Complaint and that (d) the *Franks* Complaint was attached to the Benson Complaint solely and exclusively for the purpose of prejudicing this court.

## COUNT I

### NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM FOR DEBT OWED UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

**39.**     The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

**40.**     The quotation of parts of Bankruptcy Code Section 5232(a)(2)(A) does not require an answer or any other response.

**41.**     The Defendant denies the allegation made in this paragraph.  By way of further answer, the Defendant states that (a) SER is a Massachusetts limited liability company governed by the Massachusetts limited liability company act, (b) the documents relied on by Benson are governed by Massachusetts law, (c) there is not even an  allegation that Defendant acted in any capacity other than as a member or manager of SER when he signed the 2020 Benson-SER Mortgage prepared by Attorney Fadden, (d) there is no allegation that Defendant knew of the mistake made by Attorney Fadden, (e) there is no allegation that any statement in the 2020 Benson-Keith Gorman Guaranty given by Defendant was false, untruthful or even incorrect and that (f) the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company; and no member or manager of a limited liability company shall be personally liable, directly or indirectly, including, without limitation, by way of indemnification, contribution, assessment or otherwise, for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

**42.**     The Defendant denies the allegation made in this paragraph.

**43.**     The Defendant denies the allegations made in this paragraph.  By way of further answer, if and to the extent that Benson seeks to rescind or set aside the Compromise and Settlement Transaction, then the indebtedness arose before the transaction and cannot be the result of the transactions or the alleged, but  unspecified false representations as Benson admits by this reference to the "defaulted SER Credit Agreement; to the extent Benson does not seek to

rescind the Compromise and Settlement Transaction, then it limits the amount of Defendant's liability, if any.

44.    The Defendant denies the allegations made and conclusions of fact and law expressed in this paragraph.

## COUNT II

### NON-DISCHARGABILITY OF PLAINTIFF'S CLAIM FOR DEBT OWED  UNDER SECTION 523(a)(2)(B) OF THE BANKRUPTCY CODE

45.    The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

46.    The quotation of parts of Bankruptcy Code Section 5232(a)(2)(A) does not require an answer or any other response.

47.    The Defendant does not have sufficient information at this time to form a reasonable belief regarding the completeness and truth of the allegation made in this paragraph and therefore denies such allegation.  By way of further answer, the Defendant states that (a) he has no way of knowing what the phrase "[a]s set forth above" means,  (b) the Plaintiff fails to distinguish between SER and the Defendant by which he must mean the Defendant, (c) the Plaintiff fails to allege which of the "written 2020 Benson-SER Note, 2020 Benson-SER Mortgage or Benson-SER Security Instruments, and the Defendant's  2020 Guaranty constitutes a "statement in writing – . . . (ii) respecting the [Defendant's financial condition" within the meaning or Bankruptcy Code Section 523(a)(2)(B) or any of the other elements of the statute.

48.    The Defendant denies the allegations made in this paragraph.  By way of further answer, the Defendant states that (a) Attorney Fadden may have made a mistake when he prepared the 2020 Benson-SER Mortgage, but on information and belief, the mistake was

innocent and (b) an innocent mistake is not a false misrepresentation within the meaning of

Bankruptcy Code Section 523(a).

49.     The Defendant does not have sufficient information at this time to form a

reasonable belief regarding the completeness and truth of the allegation made in this paragraph

and therefore denies such allegation.  By way of further answer, the Defendant states that Benson

does not allege that his reliance met the standards of the Code.

50.     The Defendant denies the allegations made in this paragraph.

51.     The legal and factual conclusion expressed in this paragraph does not require an

answer or any other response.  To the extent an answer or response is necessary, the Defendant

denies the conclusions.

**COUNT III**

**NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM FOR DEBT OWED
UNDER SECTION 523(a)(4) OF THE BANKRUUPTCY CODE**

52.     The Defendant re-alleges, reiterates and specifically incorporates by reference

each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if

set forth at length herein.

53.     The quotation of parts of Bankruptcy Code Section 5232(a)(4) does not require an

answer or any other response.

54.     The Defendant denies the allegations made in this paragraph.  By way of further

answer, the Defendant states that (a) he has no way of knowing what the phrase "[a]s set forth

above" means,  (b) the Plaintiff fails to distinguish between SER and the Defendant by which he

must mean the Defendant, (c) the Plaintiff fails to allege whether the claim made in this

paragraph constitutes "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or

larceny or any specific fact that supports the allegation and (d) the Plaintiff fails to allege how

Benson would have collected the money allegedly due on the "defaulted SER Credit Agreement or the Defendant's guaranty of that date or why the SER Credit Agreement remained enforceable despite the passage of time.

55.    The legal and factual conclusion expressed in this paragraph does not require an answer or any other response.  To the extent an answer or response is necessary, the Defendant denies the allegation made in this paragraph.

## COUNT IV

### NON-DISCHARGEABILITY OF PLAINTIFF'S CLAIM FOR DEBT OWED UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE

56.    The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length herein.

57.    The quotation of parts of Bankruptcy Code Section 5232(a)(6) does not require an answer or any other response.

58.    The Defendant denies the allegation made in this paragraph.  By way of further answer, the Defendant states that (a) the Defendant did not act willfully or maliciously within the meaning of the statute as Benson knows or would know if Benson made a reasonable investigation into the merits of the claims made in the Complaint before filing it and that (b) a mistake does not constitute a willful or malicious injury and that (c) Plaintiff has alleged no fact from which this court could find that Defendant acted willfully or maliciously within the meaning of the statute.

59.    The Defendant denies the allegations made in this paragraph.  By way of further answer, the Defendant states that the pre-existing Ordinary Course, Unsecured Trade Debt always was and remains dischargeable debt.

## AFFIRMATIVE DEFENSES AND DEFENSES

**60.**    The Defendant hereby gives Plaintiff notice that Defendant intends to rely on, prove the following affirmative defenses:

**a.**    The Complaint and each Count thereof fails to satisfy the heightened pleading standard imposed by FRBP 7009 and FRCP 9.

**b.**    Accord and satisfaction.

**c.**    Compromise and settlement.

**d.**    The indebtedness compromised and settled by the Compromise Transaction – the allegedly defaulted SER Credit Agreement -- was never anything other than Ordinary Course, Unsecured Trade Debt that arose from the sale of goods on credit.

**e.**    Benson knew that the Defendant, SER, Frank Gorman and Bryan Gorman were experiencing significant business and financial difficulties and that the amount due under the allegedly defaulted SER Credit Agreement was not recoverable as an unsecured claim and entered into the Compromise Transaction to improve its position with respect to some or all of the debt and benefited from the Compromise Transaction.

**f.**    Affirmative negligence of Plaintiff.

**g.**    Discharge and release.

**h.**    Unconscionability.

**i.**    Usury.

**j.**    The original Ordinary Course, Unsecured Trade Debt under the SER Credit Agreement and the Guaranty thereof allegedly given by Defendant, which is the subject of the Benson Proof, was nothing more than debt for goods sold to SCR on open account that was and is dischargeable if revived in or as a result of this action.

k.      The Plaintiff suffered no loss, harm or damage as a direct or proximate result of the acts, actions or statements complained of by the Plaintiff in the Complaint.as the result of any statement, act or action of the Defendant.

l.      The Plaintiff has not restored the status quo before the Compromise and Settlement Transaction and cannot maintain any action or claim based on the original Ordinary Course, Unsecured Trade Debt.

m.      The Compromise and Settlement Transaction is avoidable.

n.      The Defendant cannot be held liable for the mistake or supervening negligence or other misconduct of a third-party professional in the course of his professional duties to the Defendant.

o.      The refusal of 59 Newhall to permit the payment of the $90,000 due Benson from SER under the terms of the 2020 Benson-SER Note was the sole and proximate cause of the loss alleged by the Plaintiff.

p.      The Plaintiff failed to join a necessary party.

q.      Accord and satisfaction.

r.      Comparative or contributory negligence.

s.      Lack or failure of consideration.

t.      Illusory consideration.

u.      Partial Payment.

v.      Release.

w.      Negligence and comparative negligence.

x.      Statute of frauds.

y.      Statute of limitations.

**z.**     The Defendant cannot be held liable in his individual capacity for acts done, actions taken, and documents executed and delivered in the name and on behalf of a limited liability company.

**aa.**     Failure to plead the facts supporting the Plaintiff's claims on alleged fraudulent representations, false pretenses and actual fraud, embezzlement and larceny with the specificity required by Bankruptcy Rule 7009 or any specificity whatsoever.

**bb.**     The Defendant did not knowingly make a false representation, or a false representation made in disregard of the truth.

**cc.**     The Defendant did not know that any statement made in 2020 Benson-SER Mortgage prepared by Attorney Fadden wrong or any of the other documents executed in connection with the Compromise and Settlement Transaction was false or even when signed by him.

**dd.**     The Compromise Transaction was not a deceit, artifice, trick or design involving direct and active operation of the Defendant's mind, used to circumvent and cheat Benson, which benefited from the Transaction, or the result of any wrongful intent.

**ee.**     The Defendant made no statement that he did not believe to be true, did not have confidence in or did not have a reasonable basis for the statement.

**ff.**     Benson did not justifiably or reasonably rely on any act, action or statement done, taken or made by Defendant.

**gg.**     The Defendant did not intend to injure Benson and did not do any act, take any action or make any materially incorrect statement that was substantially certain to lead to the damage in question.

**hh.** The Defendant took no property of Benson through the Compromise Transaction with an intent to convert the property to the Defendant's use without the consent of the owner nor does Benson make any allegation in the Complaint that would support a finding of embezzlement.

**ii.** The Defendant did not wrongfully take any property of Benson without its consent and with intent to convert the property pursuant to the Compromise Transaction or with scienter -- the knowledge that the use is devoid of authorization nor does Benson make any allegation in the Complaint that would support a finding of larceny.

**jj.** An avoidable transfer cannot be the basis of a non-dischargeable claim.

**kk.** The default rate interest and attorneys' fees reserved in the 2020 Benson-SER Note and Security Instruments constitute an unenforceable penalty and not a legitimate liquidated damages provision.

## CLAIM OBJECTION AND COUNTERCLAIMS

The Defendant counterclaims against the Plaintiff and objects to Proof of Claim 11 filed by Benson under oath and penalties of perjury on the grounds set forth above and as follows:

## BACKGROUND AND COMMON FACTUAL ALLEGATIONS

**61.** The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

**62.** The Defendant commenced this bankruptcy case on November 15, 2022 (the "Petition Date").

**63.** On or about January 24, 2023, Benson filed the Benson Proof, which is Claim 11 in the *Official Claims Register.*

64.     Benson asserts an unsecured claim against the Defendant as a guarantor in an amount not less than $406,419.93, which represents amounts allegedly due Benson for $261,103.34 in goods sold on open account to Southern End Realty ("SER") known as the original Ordinary Course, Unsecured Trade Debt.

65.     SER and the Defendant were engaged in the capital intensive real estate development and construction business on February 14, 2020 (the "Business").

66.     Benson obscures the dates of the sale transactions by using the phrase "[a]s of the date of the Defendant's petition, SER purchased and received goods from Benson in the amount of $261,103.34 but, in fact, those sales and a substantial portion of the interest and attorneys' fees claimed by Benson occurred and accrued before the Compromise and Settlement Transaction entered into by Benson, SER, the Defendant, F. Gorman and B. Gorman on or as of February 14, 2020 (the "Settlement Date").

67.     The sales were made to SER by Benson beginning in 2011.  On information and belief, Benson stopped selling to SER immediately before the Settlement Date.  On information and belief, the list of charges included in the Benson Proof shows or appears to show that after establishing the "$261,103.34" balance the only charges to SER were for interest at the rate of 1.50%.

68.     On information and belief, Benson knew that SER, Frank, Bryan and Keith Gorman were experiencing serious financial problems, insolvent and without sufficient during late 2019 and early 2020 and that the claims asserted in the Benson Proof were unsecured, dischargeable claims.

69.     Defendant was engaged and/or was about to engage in the Business, including the development and completion of real estate development projects, all of which were known to

Benson which was familiar with the business and financial condition of SER, the Defendant and F. and B. Gorman, for which the remaining assets of the Defendant were unreasonably small in relation to the Business and its reasonably expectable needs.

**70.**    On information and belief, Benson demanded security for the payment of the Ordinary Course, Unsecured Trade Debt sometime prior to February 14, 2020 to improve its position with respect to the collection of Ordinary Course, Unsecured Trade Debt vis-à-vis other creditors because he knew the remaining assets of SER and the Defendant were unreasonably small in relation to the Business and its liabilities.

**71.**    On or about February 14, 2020, SER, Frank Gorman, Bryan Gorman and Keith Gorman entered into the Compromise and Settlement Transaction.  On  information and belief, SER executed and delivered the $150,000 2020 Benson-SER Note, 2020 Benson-SER Mortgage and the other documents described very generally in the Benson Proof, Frank, Bryan and Keith Gorman executed and delivered the Guaranties and Benson accepted such documents in compromise and  full settlement of the Ordinary Course, Unsecured Trade Debt that existed prior to the Compromise and Settlement Transaction. In the Benson Proof, Benson does not identify specifically the mortgage given to it by SER as security for the 2020 Benson-SER Note.  In addition, the Defendant and Frank Gorman and Bryan Gorman guaranteed the Ordinary Course, Unsecured Trade Debt.

**72.**    On February 14, 2020, neither SER, Frank Gorman, Bryan Gorman nor the Defendant owed Benson any money other than the Ordinary Course, Unsecured Trade Debt.

**73.**    On information and belief, the parties entered into the Compromise and Settlement Agreement to reduce the Ordinary Course, Unsecured Trade Debt to $150,000

payable pursuant to the terms of the 2020 Benson-SER Note in exchange for giving Benson some security for the payment of the Compromised Ordinary Course, Unsecured Trade Debt.

74.     Benson ignores the fact that (a) SER paid Benson the sum of $60,000 pursuant to the terms of the 2020 Benson-SER Note from the sale of condominium units mortgaged to Benson pursuant to the 2020 Benson-SER Mortgage and (b) there was in fact enough money from the net proceeds of the third condominium unit mortgaged to pay Benson the $90,000 remaining due Benson had 59 Newhall Street Realty Trust ("59 Newhall Street") not taken the money.

75.     On information and belief, Benson took no action to protect its interest in the $90,000 that would have paid the balance due Benson in full.

Compromise Transaction Limits Claim to $90,000 Dischargeable Claim.

76.     The balance due on the Compromise Transaction is at most $90,000, plus interest and reasonable attorneys' fees, costs and expenses, less payments, offsets, recoupments, and counterclaims.

## COUNTERCLAIM  A

## THE BENSON CLAIMS MUST BE DISALLOWED TO THE EXTENT THEY CONSTITUTE PENALTIES

77.      The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

78.     Benson has failed to provide a complete accounting for the balance due under the 2020 Benson-SER Note.

79. On information and belief, Benson received substantial payments from Zaana-17 LLC, Defendant in *In re Zaana-17 LLC* ("*Zaana*" and the "Zaana Case") in addition to the $30,000 paid to Benson by SER from the proceeds of condominium units.

80. To the extent that Zaana paid Benson more than market prices for the goods sold to Zaana, the Defendant is entitled to a credit for the excess payment.

## COUNTERCLAIM A-1

### BENSON CLAIM NOT VALID OR ENFORCEABLE TO THE EXTENT IT INCLUDES PENALTIES IN THE FORM OF LATE FEES, DEFAULT INTEREST, INTEREST ON DEFAULT INTEREST AND ATTORNEYS' FEES

81. The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

82. In the Complaint, Benson seeks to recover a 10% late fee, interest at a "default rate of 25%" and "attorneys' fees following an alleged default. *Complaint, ¶ 19.*

83. Benson does not allege in the Complaint (a) the date of each sale to SER before February 20, 2023, (b) the due date of each invoice submitted in connection with a pre-February 20, 2023 sale, (c) the date of the alleged defaults under the SER Credit Agreement date of each default under the SER Credit Agreement, the 2020 Benson-SER Note or the Security Instruments or (d) the interest rates used to determine the balance allegedly due.

84. The SER Credit Agreement permits Benson to charge a "late charges at the prevailing rate . . . [of] one and one-half percent (1.5%) per month each month until paid in full" and attorneys' fees, should legal action be required to enforce this agreement. The SER Credit Agreement does not permit Benson to charge interest at any rate.

85.     On information and belief, Benson never brought a court action to enforce the SER Credit Agreement until it filed this action although it did file proofs of claim in the Zaana-17 bankruptcy case and this case.

86.     Neither the SER Credit Agreement, the 2020 Benson-SER Note nor any of the Security Instruments include any text to the effect that (1) the damages anticipated as a result of the breach are uncertain in amount or difficult to prove; (2) the parties intended to liquidate damages in advance; and (3) the amount agreed upon is reasonable and not greatly disproportionate to the presumable loss or injury.

87.     Benson held a stronger bargaining position than SER and the Defendant, which it used to its advantage in the case of the Compromise and Settlement Transaction and sales to Zaana-17.

88.     In this Circuit, default interest rates that constitute "unenforceable penalt[ies]" are not allowable.  *See, e.g., Prudential Ins. Co. of America v. S.W. Boston Hotel Venture,* 748 F.3d 393, at 414 (1ˢᵗ Cir. 2014) and *OneUnited Bank v. Charles St. African Methodist Episcopal Church of Boston,* 501 B.R. 1, at 21 and 2013 U.S. Disclosure Statement. Lexis 140782, at 11 (D. Ma. 2013).

89.     The SER Credit Agreement, 2020 Benson-SER Note and Security Instruments do not include the boiler-plate acknowledgment or any factual basis to conclude that (1) at the time of contracting the actual damages flowing from a breach were difficult to ascertain; and second, that the sum agreed on as liquidated damages represents a reasonable forecast of damages expected to occur in the event of a breach.

90.     Where damages are easily ascertainable, and the amount provided for is grossly disproportionate to actual damages or unconscionably excessive, the court will award the aggrieved party no more than its actual damages.

91.     Under New Hampshire law, a liquidated damages provision is valid only if (1) the damages anticipated as a result of the breach are uncertain in amount or difficult to prove; (2) the parties intended to liquidate damages in advance; and (3) the amount agreed upon is reasonable and not greatly disproportionate to the presumable loss or injury.  _Orr v. Goodwin_, 157 N.H. 511, 514, 953 A.2d 1190 (2008).

92.     Mr. Gorman never discussed liquidated damages with Benson and did not intend to liquidate any damages in advance.

93.     On information and belief, the actual damages sustained by Benson are far less than the amount sought in the Complaint.

94.     On information and belief, the damages that would be sustained by Benson if it failed to collect money lawfully due was easily and readily ascertainable by determining the interest actually lost by Benson and the amount of attorneys' fees, costs and expenses that would be reasonably incurred by Benson in recovering the money.

95.     On information and belief, the late fees, default interest (which is allegedly $145,316.59 alone and increasing) and costs of collection are grossly disproportionate to the actual damages sustained by Benson or unconscionably excessive measured against the statutory rates set by Massachusetts and New Hampshire, which reflect legislative policy decisions.

WHEREFORE, Mr. Gorman respectfully requests this court to:

A.      Determine that all or a portion of the late charges, default interest and attorneys' fees which are not qualified by "reasonable" constitute penalties and not a reasonable liquidated damages clause.

B.      Disallow the excessive portion of the late charges, default interest and attorneys' fees.

C.      Grant Mr. Gorman all of the other relief requested herein.

## COUNTERCLAIM  B

### THE BENSON PROOF IS BARRED OR LIMITED BY THE COMPROMISE AND SETTLEMENT TRANSACTION

**96.**      The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

**97.**      The Plaintiff may not assert the Original Ordinary Course, Unsecured Trade Debt without first rescinding the Compromise and Settlement Transaction.

**98.**      Rescission requires the party seeking rescission to restore the other party to the status quo ante – put the other party back in the same position that such party was in before the transaction.

**99.**      SER paid Benson $60,000 on account of what had been nothing more than Ordinary Course, Unsecured Trade Debt pursuant to the Compromise and Settlement Transaction.

**100.**      Benson has the money paid to it by SER.  To date, Benson has not repaid the $60,000 to SER or even offered to repay the money as required to rescind the Compromise and

Settlement Transaction and terminate the 2020 Benson-Keith Gorman Guaranty and the other documents without which Benson may not recover the pre-February 14, 2020 indebtedness.

101.    On information and belief, the Compromise and Settlement Transaction, which remains in effect, compromised and settled all of the claims that Benson allegedly holds against the Defendant other than those arising under or by reason of the $150,000 2020 Benson-SER Note, Benson-SER Mortgage, Benson-SER Security Instruments and the 2020 Benson-Keith Gorman Guaranty.

As a result, except for any claim based on the $150,000 2020 Benson-SER Note and Security Instruments, is barred by the Compromise and Settlement Transaction.

**WHEREFORE,** the Defendant respectfully requests that this Court to:

A.    Disallow the Benson Proof to the extent it exceeds the sum of $90,000 if this Court does not avoid the 2020 Benson-Keith Gorman Guaranty; and

B.    Grant Defendant such further relief as may fair and equitable, lawful or just.

## COUNTERCLAIM  C

### BENSON CLAIMS ARE AVOIDABLE UNDER CODE SECTION 544(a)

102.    The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

103.    Benson alleges that on February 14, 2020, the Defendant incurred unsecured obligations to it in connection with the Compromise and Settlement Transaction by executing and delivering the 2020 Guaranty to it (the "Benson Unsecured Obligations").

104.    Under Code Section 544(a), a trustee, like the Defendant, has:

> As, of the commencement of the case, and without regard to any knowledge of the [Defendant] or of any creditor; the rights and powers of,

or may avoid any transfer of property of the Defendant or any obligation incurred by the Defendant that is voidable by –

(1) a creditor that extends credit to the Defendant at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [and]

(2) a creditor that extends credit to the Defendant at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the Defendant that is returned unsatisfied at such time, whether or not such a creditor exists; . . . .

105.    The purpose of Bankruptcy Code Section 544(a) is to provide the Defendant with standing and a procedural vehicle to avoid an unperfected security interest under the rights and powers of a hypothetical judicial lien creditor under applicable non-bankruptcy law. "whether or not such a creditor exists."  Bankruptcy Code, § 544(a).

106.    The Defendant is a trustee within the meaning of Code Section 544, which is known as the "strong-arm clause" of the Code.

107.    No actual creditor need exist.

108.    All of the claims asserted against the Defendant by Benson in the Complaint are unsecured claims as against him.

109.    The Defendant is also a trustee and the perfect, hypothetical lien and/or judgment creditor without any knowledge of the transactions by, between or involving the Defendant and Benson, including without limitation, the incurrence of the 2020 Unsecured Benson Obligations.

110.    A "creditor [whether actual or hypothetical] that extended credit to the Defendant at the time of the commencement of the case" could have obtained on the Petition Date "with respect to such credit, a judicial lien on all property" of the estate by (a)  making a pre-judgment attachment thereof pursuant to RSA 511-A (the "Attachment Statute and/or (b) making a post-

judgment attachment of any and "all property, real and personal, which is liable to be taken in execution . . . ."

111.    The Defendant, as creditor [whether actual or hypothetical] that extended credit to the Defendant at the time of the commencement of the case could have obtained on the Petition Date "with respect to such credit, an execution against the Defendant that is returned unsatisfied at such time" by recovering a judgment against the Defendant, filing a Bill for Taxation of Costs and requesting and serving a Writ of Execution on the Defendant pursuant to RSA 527.

112.    Consequently, the alleged Benson Obligation arising under the 2020 Guaranty may and should be avoided pursuant to Bankruptcy Code Section 544(a).

**WHEREFORE,** the Defendant respectfully request this Court to avoid the 2020 Guaranty and the obligations allegedly arising therefrom and grant the  Defendant such further relief as may prove to fair and equitable, just or lawful under the circumstances.

## COUNTERCLAIM  C-1

### BENSON CLAIMS ARE AVOIDABLE UNDER CODE SECTION 544(b)

113.    The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

114.    Section 544(b) (1) reads in pertinent part as follows:

Except as provided in paragraph (2), the trustee may avoid any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title [11 USCS § 502] or that is not allowable only under section 502(e) of this title [11 USCS § 502(e)].

**115.**    The 2020 Unsecured Benson Obligations allegedly incurred by the Defendant under the terms of Defendant's 2020 Benson Guaranty  are "obligations" within the meaning of Code Section 544.

**116.**    The 2020 Unsecured Benson Obligations are unsecured claims.

**117.**    On information and belief, the Defendant had numerous many creditors held unsecured claims against the Defendant on February 14, 2020 when the Defendant allegedly incurred the obligation to Benson under the terms of the February 2020 Guaranty in connection with the Compromise and Settlement Transaction, including without limitation, Benson, Maureen Appleyard, Trustee of 59 Newhall Street Realty Trust ("59 Newhall Trust"), Capital One N.A. ("Capital One"), On Deck Capital, Inc., Silva Bros. Investments  ("Silva Bros") and the other claims listed in Schedule E/F to the Defendant's Statement of Financial Affairs listed as "incurred" on or before February 14, 2020.

**118.**    On information and belief, the Defendant had numerous many creditors held unsecured claims against the Defendant on February 14, 2020 when the Defendant allegedly incurred the obligation to Benson under the terms of the February 2020 Guaranty in connection with the Compromise and Settlement Transaction, including without limitation, Benson, Maureen Appleyard, Trustee of 59 Newhall Street Realty Trust ("59 Newhall Trust"), Capital One N.A. ("Capital One"), On Deck Capital, Inc., Silva Bros. Investments  ("Silva Bros") and the other claims listed in Schedule E/F to the Defendant's Statement of Financial Affairs listed as "incurred" on or before February 14, 2020.

**119.**    On information and belief, all of the creditors named in the preceding paragraph held unsecured claims against the Defendant on the Petition Date that are allowable in this case,

except for Silva Bros., which had its scheduled, disputed claim disallowed because it failed to file a Proof of Claim.

120.    The 2020 Unsecured Obligations  and avoidable by the Defendant under Code Section 544 under RSA 545-A:4, I(b) and RSA 545-A:5, I and other applicable state law for the reasons given in Counterclaims D and E hereof.

121.    The Federal Income Tax Return filed by SER for the year 2019, the year before the Settlement Transaction Date, shows that (a) SER had ordinary business losses of $425,366, (b) it had bled approximately $113,000 in cash over the year and had only $27,089 left, (c) SER owed over $6,308,895 in mortgages, notes and bonds, (d) SER's liabilities exceeded the value of its assets by over a million dollars and that (d) as a result, the Members (described as Partners') Capital Accounts were -$1,167,437

122.    The Federal Income Tax Return filed by SER for the year 2020, the year of the Compromise and Settlement Transaction, shows that (a)  SER had ordinary business losses of approximately $342, (b) cash had gone down from $27,089 to $677, (c) other current assets had declined from approximately $124,000 to $50,226, (d) by the end of the tax year, SER had no inventories, (e) the total value of its assets were a mere $53,873 and (f) SER owed over $1,111,998 in mortgages, notes and bonds, (d) SER's liabilities exceeded the value of its assets by over a million dollars and that (d) as a result, the Members (described as Partners') Capital Accounts had decreased to -$1,494,998.

123.    The Federal Income Tax Returns filed by the Defendant for 2019 shows losses of $211,108 and no taxable income,

124.    The Federal Income Tax Returns filed by the Defendant for 2020 establishes an adjusted gross income of -$342,980.

125.    On information and belief, the Debtor was indebted to the creditors named or referred to in the preceding paragraphs and insolvent on February 14, 2020 on a balance sheet and cash flow basis because the fair value of the Debtor's assets (less encumbrances) on February 14, 2020 was far less than the amount of the claims against the Defendant and other liabilities on such date and on the Petition Date and as shown by the Defendant's inability to pay such creditors as the liabilities became due to them.

126.    At all times material to this Complaint, the Defendant engaged in real estate development and construction business through SER (the "Business").

127.    The Business is capital intensive.

128.    During February 2020 and thereafter, SER had no  capital as shown by the balance sheets included in its 2019 and 2020 Federal Income Tax Returns.

129.    Neither SER nor the Defendant had any taxable income during 2019 or 2020 because their business losses and expenses were far more than their receipts during the same period.

130.    Benson did not give SER or the Defendant reasonably equivalent value for the 2020 Benson-SER Note and the Security Instruments, including the 2020 Benson Unsecured Guaranty.  Benson claims that it agreed to forbear from exercising privileges, remedies and rights as against SER, the Defendant and the other 2020 Guarantors but has not made any allegations regarding the fair value of the forbearance or made any allegation regarding any quantifiable, tangible benefit conferred on SER and/or the Defendant, particularly since Benson denies that the parties entered into and completed a Compromise and Settlement Transaction that satisfied the pre-Transaction indebtedness.

131.    The Benson-SER Note, Benson SER Mortgage, Benson-SER Security Instruments and the 2020 Benson-Keith Gorman Guaranty include a forbearance covenant or obligation.

132.    Benson claims that despite the Compromise and Settlement Transaction in which it received the Benson-SER Note, Benson SER Mortgage, Benson-SER Security Instruments and the 2020 Benson-Keith Gorman Guaranty, the Defendant, SER, F. Gorman and B. Gorman all owed him the same total amount and continued to bear interest at the same rate and require the payment of late fees and attorneys' fees.

133.    The 2020 Benson-SER Note and Security Instruments gave Benson at least $60,000 in value as Benson admits.

134.    On information and belief, if Benson gave any value to the Defendant, it was not reasonably equivalent to the value of the 2020 Benson-SER Mortgage and the proceeds thereof.

135.    On February 14, 2020, the Defendant was engaged in the capital intensive Business, including the development and construction of real estate development projects, for which the remaining assets of the Defendant were unreasonably small in relation to the business or transaction as shown by the claims made by Benson itself, 59 Newhall Trust, Silva Bros. and others named in Schedules D and E/F.

136.    The SER Tax Returns show that during 2019 and 2020 it suffered heavy losses, the value of its assets continued to decrease and its Members capital accounts became increasingly negative.

137.    Among other things, the Debtor's Schedules show its reliance on borrowings from the creditors named in Schedules D and E/F, including those named in paragraphs 117 and 118

hereof and such Schedules, due to SER's and the Defendant's assets being far too small in relation to the Business.

138.    Following the Compromise and Settlement Transaction ,SER and F. Gorman had to continue to borrow money to meet the financial needs of the Business.

139.    The Defendant had losses, not income during 2019 and 2020 and his home and a truck worth far less that his debt at that time.

140.    The Debtor's post February 14, 2020 assets were and proved to be unreasonably small in relation the Business and the debts that existed on that date and, on information and belief, increased thereafter for the reasons given in paragraphs 118 and 121-129 and 135-139.

141.    Based on the facts known to the Defendant about the business and financial condition of SER, its Federal Income Tax Returns, his own Federal Income Tax Returns and his own lack of income, the financial demands of on-going real estate development projects and the fact that SER and the Defendant were entirely dependent on credit to continue their Business operation, among other things, the Defendant should have believed that he would incur debts beyond his ability to pay as they became due as in fact he did..

142.    The Unsecured Benson Obligation is voidable under Section 4,I(b) and 5,I of the New Hampshire Uniform Fraudulent Transfer Act law for the reasons given in Counterclaims D and E hereof.

143.    Consequently, the execution of the 2020 Benson-Keith Gorman Guaranty and the incurrence of the 2020 Benson-Keith Gorman Unsecured Obligations and the indebtedness allegedly arising therefrom is avoidable  *ab initio* under Code Section 544(b).

**WHEREFORE,** the Defendant respectfully requests this Court to:

A.      Avoid the alleged 2020 Benson Unsecured Guaranty and the 2020 Benson

Obligations allegedly arising thereunder pursuant to Code Section 544(b);

B.      Grant the Defendant such additional relief as may prove to be fair and equitable,

just or lawful.

## COUNTERCLAIM D

## AVOIDANCE PURSUANT TO UFTA SECTION 545-A:4, I(b)

**144.**    The Defendant re-alleges, reiterates and specifically incorporates by reference

each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if

set forth at length in this Count.

**145.**    Section 4, I(b) of the New Hampshire Uniform Fraudulent Transfer Act (the

"UFTA") read as follows:

> A transfer made, or obligation incurred by a Defendant is fraudulent as to
> a creditor, whether the creditor's claim arose before or after the transfer was made
> or the obligation was incurred, if the Defendant made the transfer or incurred the
> obligation:
> . . .
> (b) Without receiving a reasonably equivalent value in exchange for the
> transfer or obligation, and the Defendant:
>
>     (1)      Was engaged or was about to engage in a business or a
> transaction for which the remaining assets of the Defendant were unreasonably
> small in relation to the business or transaction; or
>
>     (2)      Intended to incur or believed or reasonably should have
> believed that he would incur debts beyond his ability to pay as they became due.

**146.**    The Defendant had one or more creditors whose claims arose before and after

Defendant executed and delivered the 2020 Benson Unsecured Guaranty to Benson and the

Obligations allegedly arising thereunder as alleged in paragraphs 117, 118 and 119 hereof, which

are incorporated herein by reference.

**147.** The Defendant executed and delivered the alleged  2020 Benson Unsecured Guaranty to Benson and the 2020 Benson Guaranty Obligations allegedly incurred thereunder within 4 years of the Petition Date.

**148.** The Defendant did not receive reasonably equivalent value for the Defendant's 2020 Benson Unsecured Guaranty or the 2020 Benson Guaranty Obligations allegedly incurred thereunder for the reasons given in paragraph 131, 132, 133 and 134 hereof, which are incorporated herein by reference.

**149.** On information and belief, on and after February 14, 2020, the Defendant was engaged Business for which the remaining assets of the Defendant were unreasonably small in relation to the business or transaction the Defendant for the reasons given in paragraphs 118, 121-129 and 135-139 hereof , which are incorporated herein by reference, and as shown by the history of the Defendant and SER, Zaana-17 LLC, , Frank Gorman and Bryan Gorman.

**150.** On information and belief, on and after February 14, 2020, the Defendant reasonably should have believed that he would incur debts beyond his ability to pay as they became due on and after date for the reasons given in paragraph 141 hereof, which are incorporated by reference, and the history of the Defendant and SER, Zaana-17 LLC, Debtor, F. Gorman and B. Gorman, all of which have filed for protection under the Bankruptcy Code, except SER.

**151.** Consequently, 2020 Benson Unsecured Obligation may and should be avoided pursuant to UFTA Section 545-A:4, I(b).

**WHEREFORE**, the Defendant respectfully requests that this Court to:

**A.** Avoid the Defendant's 2020 Benson Unsecured Obligation.

**B.**     Grant the Defendant such additional relief as may fair and equitable, just or lawful.

## COUNTERCLAIM E

## AVOIDANCE PURSUANT TO UFTA SECTION 545-A:5, I

**152.**     The Defendant re-alleges, reiterates and specifically incorporates by reference each and every allegation made in the preceding and succeeding paragraphs hereof as fully as if set forth at length in this Count.

**153.**     Section 5 of the New Hampshire Uniform Fraudulent Transfer Act (the "UFTA") read as follows:

> I.     A . . . obligation incurred by a debtor is fraudulent as to a creditor whose claim arose . . . the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the . . .  obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the . . .  obligation.

**154.**     When the Defendant signed and delivered the 2020 Benson-Keith Gorman Guaranty on February 14, 2020, he allegedly incurred the 2020 Benson-Keith Gorman Guaranty Obligations, which are obligations within the meaning Section 5 and other provisions of the UFTA.

**155.**     The Defendant signed the 2020 Benson Guaranty and incurred the 2020 Benson Obligation within 4 years of filing this counterclaim.

**156.**     The Defendant did not receive reasonably equivalent value in exchange for the 2020 Benson-Keith Gorman Guaranty or the 2020 Benson-Keith Gorman Guaranty Obligations for the reason given in this Answer, including paragraphs 131, 132, 133 and 134 hereof.

**157.**     The Defendant was insolvent on February 14, 2020 because the sum of his debts, including the contingent claims held by Benson, 59 Newhall Trust, Silva Bros. and other

creditors named in Schedules D and E/F to the Debtor's Statement of Financial Affairs on that date was greater than the fair value of his assets, exclusive of the amount secured by a valid lien or liens on his homestead on that date or the Defendant became insolvent as a result of incurring the 2020 Benson-Keith Gorman Guaranty Obligations.

158.    Consequently, the 2020 Benson-Keith Gorman Guaranty and the 2020 Benson-Keith Gorman Guaranty Obligations are and should be avoided under RSA 545-A:5, I.

WHEREFORE, the Defendant respectfully requests that this Court to:

A.    Avoid the Defendant's 2020 Benson-Keith Gorman Guaranty and the 2020 Benson-Keith Gorman Guaranty Obligations.

B.    Grant the Defendant such additional relief as may fair and equitable, just or lawful.

Respectfully submitted,

DATED:  August 3, 2023            /s/ William S. Gannon
                                 William S. Gannon, BNH 01222 (NH)

                                 Counsel for

                                 **KEITH GORMAN**

                                 WILLIAM S. GANNON PLLC
                                 740 Chestnut Street
                                 Manchester NH  03104
                                 PH: 603-621-0833
                                 bgannon@gannonlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I served the foregoing document on each person/entity named below by causing it to be filed electronically via the CM/ECF filing system or mailed by first-class United States Mail, postage pre-paid, or in such other manner as may be indicated:

All persons/entities named on the CM/ECF Electronic Service List – electronically via CM/ECF

~ and ~

Michael J. Fadden, Esq.
2020 Lakeview Avenue
Dracut, MA 01826

Michael J. Fadden, P.C.
2020 Lakeview Avenue
Dracut, MA 01826


DATED:  August 3, 2023                    /s/ Beth E. Venuti
                                          Beth E. Venuti, Paralegal