UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | CHAPTER 11 |
| Keith Gorman,<br>Debtor. | Case No. 22-10563-BAH |
| Benson Lumber & Hardware, Inc.,<br>Plaintiff,<br>v. | Adv. Pro. No. 23-01003-BAH |
| Keith Gorman,<br>Defendant, | |
| Keith Gorman,<br>Counter-Claimant<br>v. | |
| Benson Lumber and Hardware, Inc.,<br>Counter-Defendant | |
| Keith Gorman,<br>Third-Party Plaintiff,<br>v. | |
| Michael J. Fadden, Esq. and<br>Michael J. Fadden, P.C.,<br>Third-Party Defendants | |

**DEFENDANT, COUNTERCLAIM PLAINTIFF AND DEBTOR'S REPLY TO
BENSON LUMBER & HARDWARE, INC.'S (I) RESPONSE TO CLAIM OBJECTION
AND (II) MOTION TO DISMISS DEFENDANT'S STATEMENT OF COUNTERCLAIMS**

  The Defendant, Counterclaim Plaintiff, Debtor and Debtor in Possession, **Keith M. Gorman** (the "Defendant Debtor or Debtor") respectfully objects to the Response to Claim Objection and Motion to Dismiss, *Doc. 52* filed by Benson Lumber & Hardware, Inc. ("Benson Lumber", or "Plaintiff" and the "Motion") as follows:

**DEFENDANT DEBTOR'S RESPONSE TO**
**BENSON LUMBER'S FACTUAL BACKGROUND AND ARGUMENT**

The Defendant Debtor does not take issue with most of the statements made in "Factual Issues" at this time (but does not concede that they are true) other than they are self-serving, inappropriate and irrelevant with respect to the Motion, which asks this Court to dismiss the Defendant Debtor's counter-claims. The Defendant Debtor does object to the statement that "[t]he Defendant provided collateral to Benson Lumber that it sold just weeks beforehand, and knew he did not have any interest in." *Motion,* at 4. In addition to deliberately blurring the line between ordinary course business transaction that occurred after January 1, 2011 and before February 14, 2020, Benson Lumber refuses to distinguish or cannot differentiate Southern End Realty LLC ("SER"), Frank Gorman, Bryan Gorman and the Defendant Debtor.

Benson Lumber contends that:

> "[T]he central allegation made in the Complaint is that [in February 2020,] the Defendant fraudulently induced and deceived Benson Lumber into forbearing its collection action and obtaining access to new credit (sic) by offering a Promissory Note that was secured by a mortgage on three properties.

Benson Lumber does not make a fact-supported allegation that it provided "new credit" in any specific amount or amounts on any specific date or dates. The Exhibit attached to the Benson Proof of Claim shows the accrual of interest at the rate of "1.50%" per month but not any sales on credit. Further, the Benson Lumber Complaint does not make any allegation regarding the collection action that it could have taken and the amount lost by reason of "forbearing its collection action" or offer any explanation of why the so-called February 2020 Documents are totally silent on the issue of forbearance and the pre-existing debt if, as Benson Lumber alleges, the February 2020 Transaction was not a compromise and settlement. More significantly, the Benson Lumber Complaint offers no rationale for its theory that the alleged misrepresentations

made on or about February 14, 2020 operate retroactively to make unsecured claims that arose in the ordinary course of business that date, many of which are now barred by the statute of limitation, if nothing else, non-dischargeable.  With respect to the allegation that the Defendant Debtor has asserted Counterclaims that "are more like elements of a claim objection," the Defendant admits that the Counterclaims are part of the Defendant-Debtor's Claim Objection.

    **I.  DEFENDANT DEBTOR'S RESPONSE TO DEFENDANT HAS FAILED TO MEET HIS BURDEN OF PRESENTING SUBSTANTIAL EVIDENCE TO OVERCOME THE PRESUMPTION OF VALIDITY OF THE BENSON LUMBER CLAIM.**

Benson Lumber commenced this adversary proceeding against the Defendant Debtor by filing its non-dischargeability Complaint, Doc. 1 against the Defendant Debtor (the "Complaint").  The Debtor responded by filing his Answer, Affirmative Defenses and Counterclaims Against Plaintiff, Benson Lumber (the "Answer").  The Defendant subsequently filed his First Amended Answer, Affirmative Defenses and Counterclaims Against Plaintiff, Doc. 55 (the "First Amended Answer").  "The Defendant counterclaims against the Plaintiff and objects to Proof of Claim 11 . . . on the grounds set forth above [paragraphs 1-60] and as follows," which includes the Counterclaims alleged in paragraphs 61 through 101.  Doc. 55, at 18.  In its Motion, Benson Lumber concedes that the Counterclaims "are . . . part of the Defendant Debtor's Claim Objection.

In this section of the Motion, Benson Lumber asks this Court to determine that the "Defendant's objection to the Benson Lumber Claim should be overruled and determined to be non-dischargeable" because the "claim objection advances **no** evidence or any support for the denial or reduction of the Benson Lumber Claim, much less the "substantial evidence" required to overcome the presumption of validity which the Benson Lumber Claim enjoys." *Doc. 52, at 5.*  Apparently, Benson Lumber believes and asserts that its view that the February 2020

transaction was a "forbearance agreement" despite the fact that the February 2020 documents never use the term "forbearance" and did not require Benson Lumber to forbear from exercising any collection rights against the Defendant Debtor makes meaningless the Defendant Debtor's characterization of the February 2020 Transaction and the factually robust allegations made in support of the Counterclaims.  In insisting that "a plain reading of the 2020 Guaranty" shows the [Defendant Debtor] unconditionally provide[d] a guaranty of any and all SER debt," Benson Lumber tries to avoid addressing the nature of the February 2020 Transaction, the continued enforceability of the guaranty which represents an "obligation incurred" subject to avoidance, the amounts due and the dischargeability of the Benson Lumber Claim and the affirmative defenses asserted by Defendant Debtor.

In the Motion, Benson Lumber improperly conflates the standard for dismissing an objection to a proof of claim with the burden of proof at trial.  Bankruptcy Rule 7008 sets the standard for dismissing an objection to a proof of claim.  I*n re Ditech Holding Corp.*, 2020 Bankr. LEXIS 1750 (Bankr. S.D.N.Y. 2020).

> Bankruptcy Rule 7008 incorporates Rule 8 of the Federal Rule of Civil Procedure.  As relevant, Rule 8 states that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "In determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009).  *See also In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint [and] a trustee's objection to an answer[.]"). Accordingly, claims drafted by *pro se* claimants "are to be construed liberally, but they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the plaintiff is complaining about and ... whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortg., LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 Fed. Appx. 27, 29 (2d Cir. 2005).

*Ditech, supra* at 10-11.  The Answer, Affirmative Defenses and Counterclaims provide more than sufficient allegations "sufficient to provide the court with a 'fair understanding of what the [Defendant Debtor] is complaining about and . . . whether there is a legal basis" for the complaint.  *See, e.g., Kimber, supra.*  Benson Lumber admits that it understands the dispute regarding the nature of the February 2020 Transaction.  *Motion, at 6.*  In fact, Benson Lumber has not challenged *Counter-claims A and A-1*, the Benson Claims Must Be Disallowed to the Extent They Constitute Penalties, *Counter-claim B*, the Benson Proof Is Barred or Limited By the Compromise and Settlement Transaction, *Counter-claims C, and C-1*,  Benson Claims Are Avoidable Under Section 544(a) and 544(b), *Counter-claims D and E*, Avoidance Pursuant to UFTA 545-A:4, I(b) and 545-A:5 and the allegations made in the Counterclaims.

The cases cited by Benson Lumber all address the question of whether an objecting debtor must offer "substantial evidence" at the hearing on the merits of a claim objection.

> Bankruptcy Rule 3001(f) sets the evidentiary effect of a properly filed proof of claim (i.e., one that complies with the requirements of the rule and form), stating that a claim "filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f); *see also In re Long*, 353 B.R. 1, 13 (Bankr. D. Mass. 2006) (citing *Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993).
>
> In order to rebut the prima facie evidence a proper proof of claim provides, the objecting party must produce "substantial evidence" in opposition to it. *See In re Long*, 353 B.R. at 13; *see also United States v. Clifford (In re Clifford)*, 255 B.R. 258, 262 (D. Mass. 2000). If the objection is substantial, the claimant "is required to come forward with evidence to support its claims . . . and bears the burden of proving its claims by a preponderance of the evidence." *Tracey v. United States (In re Tracey)*, 394 B.R. 635, 639 (B.A.P. 1st Cir. 2008) (*citing In re Organogenesis, Inc.*, 316 B.R. 574, 583 (Bankr. D. Mass. 2004).

Although the Defendant Debtor pleaded substantial and unchallenged allegations, which are facts for the purpose of ruling on Benson Lumber's Motion.

## II.      DEFENDANT DEBTOR HAS STATED PLAUSIBLE CLAIMS FOR RELIEF

**The Plausibility Standard.**

Under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)[1], this Court must deny the Motion to Dismiss if the allegations made by the Defendant Debtor in the Counterclaims, coupled with all reasonable inferences therefrom, "cross the line between mere possibility of relief and allege a plausible entitlement to relief." *In re Felt Mfg. Co. Inc.*, 402 B.R. at 508 (*citing Bell supra*).  The First Circuit explained *Twombley* in *Sepulveda-Villarini v. Dep't. of Education of Puerto Rico,* 628 F.3d 25, 2010 US App Lexis 25228 (1st Cir. 2010).

> The make-or-break standard, as the district court recognized, is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950-51, 173 L. Ed. 2d 868 (2009) (citing Twombly, 550 U.S. at 570); see also Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (footnote and citations omitted).  "A claim has facial plausibility when the plaintiff [or counter-claim plaintiff] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (citations omitted).

*Id.*, at 29.   The Court "must accept the allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).  A plaintiff [or counter-claim plaintiff] need not plead sufficient facts to establish a *prima facie* case.  *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 515 (2002).[2]

A court considering a motion to dismiss a complaint or counterclaims first looks for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the

---

[1] *Citing DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999).

[2] Cited with approval in *Bell, supra.*

elements of a cause of action." *See, e.g., Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). *Id.* The court need not and should not disregard statements regarding the elements of a cause of action included to provide context, particularly where, as in the Defendant Debtor's counterclaims, they are fully supported by factual allegations. Second, the court must credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if those allegations and inferences support a claim upon which relief might be granted. *Id.* Courts may augment those pleaded facts and inferences with information from "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011). "Considering a motion to dismiss is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Maroun v. N.Y. Mortg. Co., LLC (In re Maroun),* 427 B.R. (Bankr. 2000).

A.  **This Court May Not Allow Benson Lumber's Proof of Claim Because it is Not Valid or Enforceable to the Extent It Includes Penalties (Counts A and A-1)**

With respect to Counter-claims A and A-1, the question of whether the combination of late fees, interest and attorneys' fees constitute penalties constitute unenforceable penalties is a mixed question of fact and law. The Defendant Debtor properly pleads the law regarding the disallowance of penalties in this Circuit. Counter-claims A and A-1 "pleads [enough] factual content that allows the court to draw the reasonable inference that Benson Lumber overstated its claim." The Defendant Debtor alleges that "Benson seeks to recover a 10% late fee, interest at a "default rate of 25%" and "attorneys' fees following an alleged default." *Doc. 55, First Amended Answer, ¶ 82 and Doc. 1, Complaint, ¶ 19 and 20.* The Defendant Debtor also properly alleges that Benson Lumber did not properly account for payments made by SER is sufficient to sustain Counter-claim A. The Defendant Debtor also alleges based on the Benson

Complaint that the Plaintiff does not allege in the Complaint (a) the date of each sale to SER before February 20, 2023, (b) the due date of each invoice submitted in connection with a pre-February 20, 2023 sale, (c) the date of the alleged defaults under the SER Credit Agreement date of each default under the SER Credit Agreement, the 2020 Benson-SER Note or the Security Instruments or (d) the interest rates used to determine the balance allegedly due.

The allegations made by the Defendant Debtor permits this Court to draw a reasonable inference at this stage of this adversary proceeding that some or all of the interest and other sums sought by Benson Lumber are unenforceable penalties under New Hampshire law or simply not due and collectible.  As Benson Lumber knows, its revisionist allegation that it is seeking to recover nothing but 18% interest is improper in the context of the Motion, which seeks the dismissal of Counter-claims A and A-1, and does not address the underlying accounting issues, which the Defendant Debtor has every right to challenge.

> **B.  This Court May Not Dismiss Defendant Debtor's Claim that Benson Lumber's Proof of Claim is Barred or Limited by the Compromise and Settlement Transaction.**

In this section of the Motion, Benson Lumber insists that Counter-claim B should be dismissed because it is a claim objection and the Defendant Debtor "advances no evidence for the denial or reduction of the Benson Lumber Claim, much less the "substantial evidence" required to overcome the presumption of validity of the claim.  Benson Lumber continues to conflate the issues of how much a plaintiff must allege to survive a challenge under Bankruptcy Rule 7012(b)(6), which is governed by Bankruptcy Rule 7008, and the burdens of going forward and proof at trial.  In fact, Benson Lumber simply insists that its characterization of the February 2020 Transaction is correct despite the fact that the February 2020 Documents did not require Benson Lumber to forbear from exercising collection rights against the Defendant Debtor or

even mention the words "forbear" or "forbearance" or discuss or refer to "collection rights" as opposed to the Defendant Debtor's understanding of the February 2020 Transaction.

In Counter-claim B, the Defendant Debtor makes the allegations necessary to permit this Court to support a reasonable inference at this stage of this adversary proceeding that the February 2020 Transaction was a compromise and settlement transaction as alleged by the Defendant Debtor.  *See Doc. 55, First Amended Answer, ¶¶ 67, 68, 69, 70, 71, 73, and 101.*  The Defendant Debtor alleged, among other things, that:

> 67.  The sales were made to SER by Benson beginning in 2011. On information and belief, Benson stopped selling to SER immediately before the Settlement Date. On information and belief, the list of charges included in the Benson Proof shows or appears to show that after establishing the "$261,103.34" balance the only charges to SER were for interest at the rate of 1.50%. Benson knew [during February 2020] that SER, Frank, Bryan and Keith Gorman were experiencing serious financial problems, insolvent and without sufficient during late 2019 and early 2020 and that the claims asserted in the Benson Proof were unsecured, dischargeable claims.
>
> 70.  On information and belief, Benson demanded security for the payment of the Ordinary Course, Unsecured Trade Debt sometime prior to February 14, 2020 to improve its position with respect to the collection of Ordinary Course, Unsecured Trade Debt vis-à-vis other creditors because he knew the remaining assets of SER and the Defendant were unreasonably small in relation to the Business and its liabilities.
>
> 71.  On or about February 14, 2020, SER, Frank Gorman, Bryan Gorman and Keith Gorman entered into the Compromise and Settlement Transaction. On information and belief, SER executed and delivered the $150,000 2020 Benson-SER Note, 2020 Benson-SER Mortgage and the other documents described very generally in the Benson Proof, Frank, Bryan and Keith Gorman executed and delivered the Guaranties and Benson accepted such documents in compromise and full settlement of the Ordinary Course, Unsecured Trade Debt that existed prior to the Compromise and Settlement Transaction. In the Benson Proof, Benson does not identify specifically the mortgage given to it by SER as security for the 2020 Benson-SER Note. In addition, the Defendant and Frank Gorman and Bryan Gorman guaranteed the Ordinary Course, Unsecured Trade Debt.

72. On February 14, 2020, neither SER, Frank Gorman, Bryan Gorman nor the Defendant owed Benson any money other than the Ordinary Course, Unsecured Trade Debt.

73. On information and belief, the parties entered into the Compromise and Settlement Agreement to reduce the Ordinary Course, Unsecured Trade Debt to $150,000 payable pursuant to the terms of the 2020 Benson-SER Note in exchange for giving Benson some security for the payment of the Compromised Ordinary Course, Unsecured Trade Debt.

This Court must assume that the allegations are true. The allegations are fact-specific and more than sufficient to draw an inference that the delivery of the February 2020 Note and Mortgage satisfied the underlying Ordinary Course, Unsecured Trade Debt. Given the undeniable fact that the February 2020 Transaction Documents attached to the Benson Lumber Complaint do not mention require Benson Lumber to "forbear" from pursuing collection activities or even use the words "forbear" or "forbearance," and do not show any new credit extended to SER or the Defendant Debtor, this Court must accept Defendant Debtor's characterization of the February 2020 Transaction, including the cancellation of the pre-existing Ordinary Course, Unsecured Trade Debt at least for the purpose of ruling on the Motion.

    **C.    This Court Should Not Dismiss Defendant's Claim that Benson Lumber's Claims Are Avoidable Under Bankruptcy Code Section 544 (Counts C and C-1) and UFTA Sections 545-A:4, I(b) and 545-A:5,I (Counts D and E).**

In this Section of the Motion, Benson Lumber argues that as a threshold matter, he is relying upon his own fraud for material elements of his claims. *Motion, at 10.* Benson Lumber must know that its contention is untrue. Benson Lumber knows that SER would have paid the last $90,000 due under the SER Note from the proceeds of the sale of the last Highland Condominium Unit had 59 New Hall Street Realty Trust had not called its loans to the Debtor. *Doc. 55, First Amended Answer,* ¶ *74.* But for the independent action of 59 New Hall Street Realty Trust, which was beyond the Defendant Debtor's control, SER could and would have paid

Benson Lumber as alleged in paragraphs 28 and 60, subparagraph o. Bankruptcy Code Section 544 and UFTA Sections 545-A:4, I(b) and 545:5, I provide debtors and others with respect to which the Defendant Debtor's alleged (but unproven) fraud is irrelevant if the "obligation or obligations incurred" by the Defendant Debtor are avoidable under the statutes.

Contrary to the legal argument made by Benson Lumber, Bankruptcy Code Section 544(a) is not limited to avoiding a secured claim or a claim based on a transfer of property of the Defendant Debtor. It expressly and undeniably permits a trustee or debtor in possession to "avoid any obligation incurred by the debtor," whether secured or unsecured, as long as the other elements of the statutory claim are satisfied. (*Emphases added*). The February 2020 Guarantee is an "obligation" within the meaning of the statute. The Defendant Debtor alleged the other elements of the statutory claim in paragraphs 108 – 109 and alleged facts in paragraphs 109, 110 and 111 that are more than sufficient for this Court to draw an inference that the February 2020 Guarantee given the Defendant Debtor may be avoided by this Court. Since "that is the operation of Section 544(a) of the Bankruptcy Code," this Court should not dismiss Counter-claim C .

With respect to Counter-claim C-1, Benson Lumber asks this Court to dismiss the Counter-claim because "it is not at all clear that the status of those creditors' claims at the time of the 2020 Guaranty or that one was holding an allowed unsecured claim. The Debtor specifically and expressly alleges in Counter-claim B that:

> 115. The 2020 Unsecured Benson Obligations are unsecured claims.
>
> 116. On information and belief, the Defendant had numerous many creditors held unsecured claims against the Defendant on February 14, 2020 when the Defendant allegedly incurred the obligation to Benson under the terms of the February 2020 Guaranty in connection with the Compromise and Settlement Transaction, including without limitation, Benson, Maureen Appleyard, Trustee of 59 Newhall Street Realty Trust ("59 Newhall Trust"), Capital One N.A.

("Capital One"), On Deck Capital, Inc., Silva Bros. Investments ("Silva Bros") and the other claims listed in Schedule ELF to the Defendant's Statement of Financial Affairs listed as "incurred" on or before February 14, 2020.

117.   On information and belief, the Defendant had numerous many creditors held unsecured claims against the Defendant on February 14, 2020 when the Defendant allegedly incurred the obligation to Benson under the terms of the February 2020 Guaranty in connection with the Compromise and Settlement Transaction, including without limitation, Benson, Maureen Appleyard, Trustee of 59 Newhall Street Realty Trust ("59 Newhall Trust"), Capital One N.A. ("Capital One"), On Deck Capital, Inc., Silva Bros. Investments ("Silva Bros") and the other claims listed in Schedule ELF to the Defendant's Statement of Financial Affairs listed as "incurred" on or before February 14, 2020.

118.   On information and belief, all of the creditors named in the preceding paragraph held unsecured claims against the Defendant on the Petition Date that are allowable in this case.

119.   On information and belief, all of the creditors named in the preceding paragraph held unsecured claims against the Defendant on the Petition Date that are allowable in this case, except for Silva Bros., which had its scheduled, disputed claim disallowed because it failed to file a Proof of Claim.

The claims are supported by the Debtor's Petition and the Proofs of Claim filed by the creditors.  For the purpose of ruling on the Motion, this Court should take the allegations made by the Debtor and all reasonable inferences therefrom are true and conclude that the Defendant Debtor has standing to assert claims under Bankruptcy Code Section 544(b)(1).

The Defendant Debtor has not blurred the distinction between SER and himself. It is difficult to understand the allegation in the context of the Counter-claims. Defendant Debtor carefully discussed SER and himself in the Counter-claims.  See, e.g., *Doc. 55, First Amended Answer, ¶¶ 121. 122. 123, 124, 125, 128, 129, 137, 139 and 141*.  SER and its financial condition dramatically impacted the Defendant Debtor's financial condition.  Benson Lumber contorts its own position by claiming that SER was capable of offering a mortgage that would pay Benson Lumber the $150,0000 required

by the Compromise and Settlement Transaction, but only if 59 Newhall Street Realty Trust did not exercise its cross-collateral rights. To the extent that Benson Lumber argues that the Defendant Debtor was solvent on February 14, 2020, the argument is contrary to the allegations that must be taken as true together with all reasonable inferences from those allegations.

The Debtor made factual allegations sufficient to permit this Court to infer that the Defendant Debtor incurred an obligation "while the debtor was insolvent, undercapitalized or unable to pay its debts as they matured, for which the debtor received less than reasonably equivalent value." *Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co.*), 371 B.R. 589, 635-36 (Bankr. D. N.H. 2007). *Doc. 55, First Amended Answer, ¶¶ 121-129, 135-139 , 140, 141, 149, 150 and 157*. The Defendant Debtor does far more than "use labels and conclusions, and a formulaic recitation of the elements of the [statutory] cause of action." *Doc. 52, Motion at 14*. A comparison of Counter-claims C-1, D and E belie the "parroting" criticism leveled at the Debtor. Each Count incorporates or includes specific factual allegations that support the statutory element of the Counter-claim. To the Defendant Debtor, it appears that Benson Lumber read over the allegations made in the First Amended Complaint.

With respect to reasonably equivalent value issue raised by Benson Lumber, the contention is wrong. The Defendant Debtor asserts in paragraph 148 of the First Amended Answer that the Defendant Debtor "did not receive reasonably equivalent value for [the] 2020 Benson Unsecured Guaranty or the 2020 Benson Guaranty Obligations allegedly incurred thereunder for the reasons given in paragraphs 131, 132, 133 and 134." "Did not receive reasonably equivalent value in isolation" may be a conclusion; "for the reasons given in

paragraphs 131-134" is not. Benson Lumber's contention seems to be that the February 2020 Transaction gave SER the right to additional credit and obligated Benson Lumber to forbear but did not compromise and settle or reduce the underlying debt. The problem with the Benson Lumber contention is that the February 2020 Documents did not increase the SER credit line or require forbearance. *Doc. 55, First Amended Answer,* ¶¶ *131* (omitted the words "do not), 132, 133, and 134. All the Defendant Debtor got was the right to encumber property in favor of Benson Lumber and pay. SER paid Benson Lumber $60,000. As the Defendant Debtor alleges based on the factual allegations made in paragraphs 131-134, "if [Benson Lumber] gave any value to the [Defendant Debtor], it was not reasonably equivalent to the value of the 2020 Benson Mortgage and the proceeds thereof" paid to Benson. *Doc. 55, First Amended Answer,* ¶¶ *134*. All of those allegations, which must be taken as true, almost compel an inference if not a finding that the Defendant Debtor, SER, Frank Gorman and Bryan Gorman received no value, let alone reasonably equivalent value. As a result, this Court should not dismiss the Counter-claims.

## REQUESTED RELIEF

**FOR THE FOREGOING REASONS,** the Defendant Debtor respectfully requests this Court to:

    A.    Deny the Motion in its entirety; or

    B.    If this Court concludes that the Claim Objection or any one or more of the Counter-claims is deficient, grant the Defendant Debtor a reasonable opportunity to amend the Answer, Affirmative Defenses and Counter-claims; and

    C.    In any case, grant Defendant Debtor such further relief as may prove to be fair and equitable, just or lawful.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: August 9, 2023 | /s/ William S. Gannon |
|  | William S. Gannon, BNH 01222 (NH) |

Counsel for

**KEITH GORMAN**

WILLIAM S. GANNON PLLC
740 Chestnut Street
Manchester NH  03104
PH: 603-621-0833
bgannon@gannonlawfirm.com

## CERTIFICATE OF SERVICE

    I hereby certify that on this date I served the foregoing notice on all persons and entities named on the CM/ECF Electronic Service List by causing it to be filed electronically via the CM/ECF filing system.

|  |  |
|---|---|
| DATED: August 9, 2023 | /s/ Jeanne Arquette-Koehler |
|  | Jeanne Arquette |